Marshall T. GASPARD, Appellant,

v.

Diane Christina BEADLE & Kenneth Lupo, Appellees.

No. 01–99–00962–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 11, 2001.

Daryl L. Moore, Sharon McCally, Houston, for Appellant.

Kenneth G. Lupo, Houston, for Appellee.

Panel consists of Chief Justice SCHNEIDER, and Justices TAFT and SMITH *.

## OPINION

SCHNEIDER, Chief Justice.

Appellant, Marshall "Mitch" Gaspard, sued appellee, Diane Christina Beadle, for past due legal fees for services rendered. Beadle hired appellee, Kenneth Lupo, to

---

\* The Honorable Jackson B. Smith, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

represent her. Lupo filed a counterclaim for fraud and misrepresentation on Beadle's behalf. Beadle also sued for emotional distress and sought exemplary damages. Gaspard amended his petition to add Lupo as a defendant, and sued Lupo for filing a frivolous counterclaim, perjury, slander, and defamation. The judge dismissed all of Gaspard's non-contractual causes of action. The jury found in favor of Beadle, finding Gaspard both defrauded Beadle and intentionally inflicted emotional distress upon her. Beadle recovered actual damages, mental anguish damages, and exemplary damages. The judge sanctioned Gaspard for filing a frivolous counterclaim against Lupo. Gaspard appeals. We reverse the damages award to Beadle, but affirm the sanctions imposed against Gaspard.

### A. Facts and Procedural Background

Because the sufficiency of the evidence is challenged, we begin with a detailed summary of the facts. Gaspard, an attorney, met Beadle and her husband in September 1993. The Beadles entered into a written agreement with Gaspard, agreeing to pay him a fee of $150 per hour for legal representation in a real estate matter. In December 1993, Beadle filed for a divorce. The divorce proceedings lasted three years, and the divorce was finally granted in December 1996.

In March 1994, while both the divorce and the real estate matters were still pending, Beadle and Gaspard began dating. They maintained a sexual relationship. The stopped dating in December 1994. In October 1995, Gaspard wrote Beadle a letter indicating that he missed her. Beadle and Gaspard resumed their relationship in October 1995 and dated until February 1997.

Gaspard was not Beadle's attorney during the divorce; however, he assisted her with a usury claim that arose during the

divorce proceedings[1] in December 1995 and January 1996. Gaspard suggested he might be able to help, and so Beadle called her divorce attorney to offer Gaspard's assistance in drafting the pleadings on the usury issue. Gaspard drafted the pleadings and did the initial research. The facts are in dispute as to the method of payment intended for this legal assistance. Gaspard takes the position that he intended to bill Beadle for the work after the divorce action was completed. But Beadle testified that Gaspard never mentioned to her that she would have to pay for the services at an hourly rate. Beadle also testified that Gaspard agreed to perform the work for no compensation, and when he could "no longer work for free," he told her to hire another attorney.

Beadle testified she was emotionally and financially vulnerable, and continued the sexual relationship with Gaspard because of his numerous false representations. These representations included: (1) she would not have to pay him for the legal work in the usury matter; and (2) he loved her, would marry her, and take care of her. In January 1997, Beadle and Gaspard began to argue about Gaspard's ex-wife. Beadle was upset that Gaspard was spending time with his ex-wife instead of with Beadle and her children. Gaspard ended his relationship with Beadle in February 1997.

On June 16, 1997, Gaspard sent Beadle an invoice for the legal work he did on the usury matter. Gaspard acknowledged that he waited almost two years to send the invoice. He explained that the delay was so Beadle could receive the settlement money from her divorce and would be in a position to pay him. Beadle failed to pay the bill. She argues she was unable to pay the invoice because her only source of income was a meager monthly child support payment, some of which had been returned for insufficient funds.

---

1. Beadle's father-in-law's estate intervened in the Beadles' divorce proceeding to recover money he loaned them to build a house. The usury claim was a counterclaim Beadle asserted against her father-in-law's estate.

Beadle's attorney, Lupo, urged Gaspard to "write off the fees" because Lupo felt Gaspard had breached his fiduciary duty to Beadle by maintaining a sexual relationship with a client. Nevertheless, Gaspard sued Beadle for the past-due legal fees. Beadle countersued for fraud, intentional infliction of emotional distress, and punitive damages, alleging Gaspard fraudulently represented he had romantic feelings for Beadle and implied he would marry her in order to entice her into a sexual relationship. Gaspard amended his petition and also sued Lupo for filing a frivolous counterclaim, perjury, slander, and defamation. He also filed a Motion to Disqualify Lupo as Beadle's counsel, which was denied. The judge dismissed Gaspard's non-contractual causes of action and sanctioned him under Rule 13 of the Texas Rules of Civil Procedure for filing a frivolous pleading.

The jury returned a verdict in Beadle's favor on both the fraud and intentional infliction of emotional distress claims, and they found no attorney-client relationship existed between Gaspard and Beadle. The jury awarded Beadle the following: (1) $3,800 in actual damages for fraud; (2) $12,500 for intentional infliction of emotional distress; and (3) $65,000 in punitive damages. The trial court assessed monetary sanctions against Gaspard in the amount of $20,000. Gaspard appeals. We affirm in part and reverse in part.

### B. Fraud

In his first issue, Gaspard contends the pleadings and evidence were insufficient to support a finding of fraud. In his second issue, Gaspard argues that the evidence was legally and factually insufficient to support the jury's award of $3,800 in actual damages.

### 1. The Pleadings

In Beadle's Verified First Amended Answer and Counterclaims, she pleaded fraud both as an affirmative defense and as a counterclaim. A pleading is sufficient if it gives notice of the cause of action and facts being alleged so that the opposing party may adequately prepare his defense. See Tex.R.Civ.P. 45(b), 47(a); Roark v. Allen, 633 S.W.2d 804, 809–10 (Tex.1982); Transmission Exch. Inc. v. Long, 821 S.W.2d 265, 269 (Tex.App.—Houston [1st Dist.] 1992, writ denied). The actual cause of action and the elements do not have to be specified in the pleadings; it is sufficient if a cause of action can be reasonably inferred. See Boyles v. Kerr, 855 S.W.2d 593, 601 (Tex. 1993). In the absence of filed special exceptions, a petition should be liberally construed in favor of the pleader. See id. Our review of the pleadings indicates a fraud cause of action can reasonably be inferred. Because Gaspard did not file any special exceptions, and because he had notice of the fraud claim via the pleadings, we find the pleadings were sufficient to support a fraud cause of action. We overrule issue one in part.

### 2. The Evidence: The Finding of Fraud

In reviewing the legal sufficiency of the evidence, we consider only the evidence and reasonable inferences tending to support the jury's finding, viewing it in the light most favorable to the verdict. See Havner v. E–Z Mart, 825 S.W.2d 456, 458 (Tex.App.—Houston [1st Dist.] 1992, writ denied). A legal sufficiency challenge will be overruled if there is more than a scintilla of evidence to support the finding. See Star Houston, Inc. v. Shevack, 886 S.W.2d 414, 417 (Tex.App.—Houston [1st Dist.] 1994, writ denied).

We will only set aside the jury's findings for factual insufficiency if, after reviewing, weighing, and considering all the evidence, the jury finding was so against the great weight and preponderance of the evidence that the verdict was manifestly unjust. See Lofton v. Texas Brine Corp., 720 S.W.2d 804, 805 (Tex. 1986); Miller v. Kendall II, 804 S.W.2d 933, 939 (Tex.App.—Houston [1st Dist.] 1991, no writ). All evidence in the record

must be considered in the light most favorable to the verdict. *See Formosa Plastics Corp. v. Presidio Engineers and Contractors,* 960 S.W.2d 41, 48 (Tex.1998).

■ Proof of fraud requires establishing: (1) a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of its truth; (4) the speaker made the representation with the intent that it should be acted upon by the party; (5) the party acted in reliance upon the representation; and (6) the party thereby suffered injury. *See Eagle Properties, Ltd. v. Scharbauer,* 807 S.W.2d 714, 723 (Tex.1990); *Transmission Exch.,* 821 S.W.2d at 270. These elements were correctly presented to the jury for consideration in Question 9 of the charge. Some courts have also held that fraud is "an elusive and shadowy term which has been defined in some cases as any cunning or artifice used to cheat or deceive another." *Santanna Natural Gas Corp. v. Hamon Operating Co.,* 954 S.W.2d 885, 890 (Tex.App.—Austin 1997, pet. denied); *see also First State Bank v. Fatheree,* 847 S.W.2d 391, 395–96 (Tex.App.—Amarillo 1993, writ denied).

■ The jury found Gaspard committed fraud against Beadle. However, we find the evidence legally and factually insufficient to support the jury's fraud finding because there was no false misrepresentation made. Beadle based her claim of fraud on two alleged misrepresentations. We consider each in turn.

■ First, Beadle alleged that Gaspard acted as though he loved her and promised he would take care of her.[2] This is not an actionable misrepresentation. A misrepresentation is a falsehood or untruth with the intent to deceive. *See Great S. Life Ins. Co. v. Doyle,* 136 Tex. 377, 151 S.W.2d 197, 201 (1941); *Vela v.*

*Marywood,* 17 S.W.3d 750, 760 (Tex. App.—Austin 2000, pet. filed). The jury charge correctly defined a misrepresentation as:

(1) a false statement of fact;

(2) a promise of future performance made with an intent not to perform as promised, or

(3) an expression of opinion that is false, made by one claiming or implying to have special knowledge of the subject matter of the opinion.

Gaspard's behavior and statements do not rise to this level. Gaspard showed Beadle love, treated her kindly, and wanted to take care of her. The couple ended their relationship, and Gaspard changed his mind about wanting to take care of Beadle. Falsehood with intent to deceive was not present. Gaspard did not use cunning to deceive Beadle. Couples will often promise to do things for their partner while they are involved in a romantic relationship. These promises do not rise to the level of an actionable affirmative misrepresentation. Because there was no intent to deceive at the time the promise was made, the promise does not become actionable fraud when the relationship ends.

■ Second, Beadle argued that Gaspard falsely represented to her that she would not have to pay for the usury legal work that was performed. Beadle contends Gaspard made a false misrepresentation when he told her "I can no longer work for free," and asked her to find a new attorney. We hold that this statement is not sufficient to rise to the level of an actionable affirmative misrepresentation as required to prove fraud.

Trial testimony indicates that Beadle thought she would not have to pay for Gaspard's legal work because of their close relationship. Witnesses testified Beadle had no knowledge that Gaspard was going to charge her for the legal services. Gas-

---

2. Beadle does not contend that Gaspard falsely promised to marry her; she only thought he would propose marriage because their relationship was going well. Even if she did so contend, Texas no longer recognizes the cause of action of wrongful seduction.

pard's normal billing practice consisted of sending a statement and bill for legal services one or two months after work was performed, but he did not bill Beadle until almost two years after he performed legal services for her. Gaspard also testified that his normal practice was to enter into written contracts with his clients for legal representation, but in this case he did not do so. Beadle knew Gaspard's billing practices because she and her husband had entered into a written contract with him for legal representation prior to the divorce. However, there was no actionable misrepresentation.

By saying he could no longer work for free, Gaspard may have made an admission that he had worked for free in the past. But, even making every inference in Beadle's favor, the statement does not mean Gaspard never intended to charge her. It merely means that he wanted to be paid for any future work. We cannot assume that Gaspard's statement that he wanted to be paid for future work was a representation that he would never bill Beadle for previous work performed.

We find that there was no affirmative misrepresentation upon which the jury could have relied to find fraud. Based on the evidence, no reasonable jury could have concluded that a false representation was made by Gaspard. The record does not contain a scintilla of evidence that fraud was committed by Gaspard, and, thus, the evidence is legally insufficient. *See Star Houston*, 886 S.W.2d at 417. Furthermore, after considering all the evidence, we conclude the jury's fraud finding is against the great weight and preponderance of the evidence, and, thus, the evidence is factually insufficient to support the jury's fraud finding. *See Lofton*, 720 S.W.2d at 805. We sustain the rest of Gaspard's issue one. We reverse and render judgment that Beadle take nothing on her fraud claim. In light of our holding on this issue, we need not address Gaspard's issue two concerning fraud damages and decline to do so.

## Intentional Infliction of Emotional Distress

In issues three, four, five, and six, Gaspard argues the pleadings and evidence are: (1) insufficient to support a finding of intentional infliction of emotional distress; (2) insufficient to support any award for emotional distress; (3) insufficient to establish causation; and (4) insufficient to support a finding that Gaspard acted with malice. Gaspard also challenges the specific amount of $12,500.00 awarded to Beadle.

### 1. The Pleadings

In Beadle's Verified First Amended Answer and Counterclaims, counterclaim III concerned emotional distress. In the counterclaim, Beadle stated that Gaspard caused her to suffer severe emotional distress. Moreover, Beadle specified the physical manifestations of emotional distress she intended to show at trial, including headaches, depression, and loss of sleep. Based on this information, Gaspard had the requisite notice of Beadle's cause of action and had enough information to prepare an adequate defense as required by the Texas Rules of Civil Procedure. *See* Tex.R.Civ.P. 45(b), 47(a). Thus, the pleadings were sufficient to support a finding and an award for emotional distress suffered by Beadle. *See Boyles*, 855 S.W.2d at 601. We overrule part of Gaspard's issues three and four.

### 2. The Evidence: The Finding of Intentional Infliction of Emotional Distress and Damages Thereon

Gaspard contends the evidence presented by Beadle was legally and factually insufficient to support a finding and award for emotional distress. In reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict. *See Havner*, 825 S.W.2d at 458. If there is more than a scintilla of evidence to support the finding of emotional distress, Gaspard's legal sufficiency challenge will be overruled. *See Star*

*Houston,* 886 S.W.2d at 417. In examining the factual sufficiency of the evidence, the jury finding of emotional distress will only be set aside if, after considering all the evidence, we find the jury finding was so against the great weight and preponderance of the evidence that the verdict was manifestly unjust. *See Lofton,* 720 S.W.2d at 805; *Miller v. Kendall II,* 804 S.W.2d 933, 939 (Tex.App.—Houston [1st Dist.] 1991, no writ).

■ To prove intentional infliction of emotional distress, a plaintiff must establish: (1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the actions of the defendant caused the plaintiff emotional distress; and (4) the emotional distress was severe. *See Twyman v. Twyman,* 855 S.W.2d 619, 621 (Tex.1993). These elements were correctly presented to the jury in Question 12 of the charge. The jury found Gaspard intentionally inflicted emotional distress upon Beadle. However, we find the evidence legally and factually insufficient to support the jury's finding of intentional infliction of emotional distress because there is no evidence that Gaspard's conduct was extreme and outrageous.

■ Trial testimony indicates that Gaspard, an attorney, began a sexual relationship with Mrs. Beadle, a client, while she was in the middle of her divorce and while he was representing both Mr. and Mrs. Beadle in a real estate matter. While they dated, Gaspard spent time with Beadle's children, met her friends, joined in her family's Christmas and birthday celebrations, and generally treated her well. During this time, Gaspard also provided Beadle with legal assistance by drafting some pleadings in a usury counterclaim she was pursuing in her divorce action. Beadle apparently did not consider Gaspard's conduct to be extreme or outrageous until he ended the relationship with Beadle and sent her an invoice for his legal work.

There is no doubt that Beadle was unhappy after the break-up. Her emotional distress symptoms included weight gain, nausea, lack of sleep, headaches, and clinical depression. Testimony indicates she was bewildered, shocked, and distraught at receiving a bill for services she thought Gaspard would do for free. Beadle kept wondering "why he [Gaspard] would do this to her" when she "thought he had helped her out of the goodness of his heart." Beadle's neighbor testified that Beadle felt desperate, became lethargic, and displayed a general "inability to get things done." A co-worker testified that Beadle would cry in the bathroom at work. She sought professional help when her crying disrupted her job performance. Beadle's doctor testified he prescribed her "Prozac," a prescription drug for her feelings of worthlessness. Beadle also contemplated suicide, although she "wasn't going to run into the bathroom and cut [her] wrist" immediately.

■ Although Gaspard did not behave in a socially appropriate manner, we hold, as a matter of law, that his conduct was not extreme and outrageous. In a claim of intentional infliction of emotional distress, the nature of the conduct must be considered. *See Twyman v. Twyman,* 855 S.W.2d 619, 621 (Tex.1993). A plaintiff can only recover for intentional infliction of emotional distress "where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Twyman,* 855 S.W.2d at 621. Whether a defendant's conduct may reasonably be regarded as extreme and outrageous is a question of law. *See Wornick Co. v. Casas,* 856 S.W.2d 732, 734 (Tex.1993).

■ As the Texas Supreme Court has indicated, a party must have latitude to exercise his rights even if some emotional distress will result. *See City of Midland v. O'Bryant,* 18 S.W.3d 209, 217 (Tex.2000). In the case before us, Gas-

pard believed he had a right to be paid for his legal work. The timing of his bill and the manner in which Gaspard performed the legal work was not prudent; however, sending someone a bill and ending a relationship with them at the same time is simply not extreme and outrageous behavior. Insensitive or rude behavior does not amount to outrageous behavior. *See Mattix–Hill v. Reck,* 923 S.W.2d 596, 597 (Tex. 1996).

Similarly, mere insults, indignities, or other trivialities do not rise to the level of extreme and outrageous conduct. *See GTE Southwest, Inc. v. Bruce,* 998 S.W.2d 605, 612 (Tex.1999). "Occasional malicious and abusive incidents should not be condoned, but must often be tolerated in our society." *Id* at 617. It is only when such conduct becomes a regular and continuous pattern of behavior that it will rise to the level of extreme and outrageous conduct. *See id.*

We are cognizant of the Texas Supreme Court's directive that the context and the relationship between the parties must be considered when determining whether certain conduct is extreme and outrageous. *See GTE Southwest,* 998 S.W.2d at 612. In this situation, the fact that Gaspard was sexually involved with a former client and sent her a bill after ending the relationship does seem to add insult to injury; however, we do not consider such actions to be extreme and outrageous conduct.

We are also aware that some Texas courts have upheld findings of intentional infliction of emotional distress when plaintiffs become so worried that they consider taking their own lives, as Beadle did in the case before us. *See, e.g., Motsenbocker v. Potts,* 863 S.W.2d 126, 135 (Tex.App.—Dallas 1993, no writ). In addition, when a jury considers the evidence and makes a finding of emotional distress based upon correct definitions in the charge, some courts have upheld the award and finding even if the actions do not amount to ex-

treme and outrageous conduct in their own personal view. *See, e.g., Tidelands Auto. Club v. Walters,* 699 S.W.2d 939, 945 (Tex. App.—Beaumont 1985, writ ref'd n.r.e.).

However, rude behavior does not equate to outrageousness. *See Natividad v. Alexsis, Inc.,* 875 S.W.2d 695, 699 (Tex.1994) (noting that when an employee has benefit checks delayed, is given the "runaround" and fabricated excuses of lost files and malfunctioning computers, the employee was treated rudely but the conduct cannot be regarded as extreme and outrageous). In today's society, individuals need to have thick skin. As such, "[p]laintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind." Restatement (Second) of Torts § 46 cmt.d.

In the present case, we find Gaspard's behavior does not amount to an actionable intentional infliction of emotional distress claim because we find, a matter of law, there was no extreme and outrageous conduct.

We sustain the remainder of issues three, four, five, six and seven. Accordingly, we reverse the judgment awarding Beadle damages on her intentional infliction of emotional distress claim and render judgment that she take nothing on such claim. In light of our holding on this issue, we need not address Gaspard's causation issue and decline to do so.

### Exemplary Damages

In issue eight, Gaspard complains there is no actual damage finding sufficient to support an exemplary damage award. It is well settled that actual damages must be awarded in order to support a finding of exemplary damages. *See City Prod. Corp. v. Berman,* 610 S.W.2d 446, 450 (Tex.1980). Because we have reversed Beadle's recovery for both fraud and intentional infliction of emotional distress, there are no actual damages upon which to base the jury's award of exemplary damages. We sustain issue eight, reverse the exemplary damage

award, and render judgment that Beadle take nothing on her claim for exemplary damages. In light of our disposition, we need not address Gaspard's claim in issue nine that the evidence is insufficient to show malice or his jury charge argument, and we decline to do so.

### Sanctions .

 Finally, in issue 10, Gaspard argues the trial court erred in assessing sanctions against him in the amount of $20,000. We disagree. The decision to impose a sanction is left to the discretion of the trial court. *See Onwuteaka v. Gill,* 908 S.W.2d 276 (Tex.App.—Houston [1st Dist.] 1995, no writ). We review a trial court's Rule 13 sanction order under an abuse of discretion standard to determine whether the court acted without reference to any guiding rules and principles. *See Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985); *Laub v. Pesikoff,* 979 S.W.2d 686, 693 (Tex. App.—Houston [1st Dist.] 1998, pet. denied).

 Rule 13 sanctions may be imposed against an attorney who files a pleading that is both groundless and brought in bad faith. *See Woodward v. Jaster,* 933 S.W.2d 777, 782 (Tex.App.— Austin 1996, no writ). Rule 13 of the Texas Rules of Civil Procedure defines "groundless" as having no basis in law or fact and not warranted by good faith argument. TEX.R.CIV.P. 13. A Rule 13 sanction order must be supported by specific allegations of good cause. *See Dyson Descendant Corp. v. Sonat,* 861 S.W.2d 942, 950 (Tex.App.—Houston [1st Dist.] 1993, no writ); *Spiller v. Spiller,* 21 S.W.3d 451, 456 (Tex.App.—San Antonio 2000, no pet.). A trial court's failure to specify the good cause for sanctions in a sanction order may be an abuse of discretion. *See Mattly v. Spiegel, Inc.,* 19 S.W.3d 890, 896 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (citing *Thomas v. Thomas,* 917 S.W.2d 425, 432 (Tex.App.—Waco 1996, no writ)).

In this case, the sanctions order was included as part of the final judgment, but the trial judge did not list the particulars of the good cause. Gaspard complains that the trial court abused its discretion in awarding the sanctions because the judge did not state good cause for imposing the sanctions in her order.

 Nonetheless, a failure to make particular findings will be harmless error if a trial court's findings of fact and conclusions of law "supply the particulars of the good cause required by Rule 13." *Bradt v. Sebek,* 14 S.W.3d 756, 769–70 (Tex.App.— Houston [1st Dist] 2000, pet. denied). In her findings, the trial judge specified the conduct upon which she was basing the sanctions. The judge stated on the record "I find good cause to issue sanctions ... under Rule 13 for the conduct that happened after [the filing of the initial lawsuit] and the counterclaim and discovery and the whole proceedings of this case up to then. I'm also thinking that your conduct was not up to the standards of how lawyers should conduct themselves in a lawsuit ... so I'm going award sanctions in the amount of $20,000."

 The judge also noted that Gaspard filed discovery requests that were designed to harass Beadle, including an irrelevant request for an interrogatory that asked her to admit or deny if her sex drive was higher than his, and one that asked Beadle to admit she would have sexual relations with Gaspard at any time and any place. In addition, the judge noted that Gaspard asked the court to "horse whip" Beadle and Lupo in several pleadings. He also used other unnecessary, inflammatory language, including suggestions that Beadle and Lupo had conspired with the devil to ruin his good name. Finally, Gaspard admitted under oath that he had no evidence of any damage to his reputation when he filed his cause of action for libel and slander. When pleadings and motions are filed for harassment purposes, a trial court may impose sanctions against the attorney. *See Hawkins v. Estate of*

*Volkmann*, 898 S.W.2d 334, 337 (Tex. App.—San Antonio 1994, writ denied). The statements in Gaspard's amended petition included:

> I resent them using this Court to slander and defame me with a pack of lies! At a minimum, they should be horse whipped!! These people have set out to inflict as much damage and harm to my persoanl [sic] reputation as they could conceive with the help of the devil. Again, I sue both of them under any legal theory available in this State ...

Beadle's expert witness testified that such behavior was inappropriate for the legal profession and this testimony was not rebutted. We do not find the sanctions to be excessive. We find the judge's ruling on the record complies with the Rule 13 requirement that the particulars of good cause be specified. We find no abuse of discretion in this case.

Gaspard also argues that Beadle has waived her right to sanctions because a motion for sanctions was not filed pre-trial, relying upon *Remington Arms Co. Inc. v. Caldwell*. See 850 S.W.2d 167 (Tex.1993). The court in *Remington Arms* found that, by failing to request a pre-trial hearing on discovery abuse, the respondents waived their right to complain about the conduct for the first time at trial. See *id.* at 170. But the *Remington Arms* court recognized the rule was not absolute. See *id.* They explained that an absolute rule would bar the imposition of sanctions revealed for the first time during or after trial. See *id.* In the case before us today, the issue of discovery abuses was brought before the court pre-trial; however, the trial court chose to postpone ruling on the sanctions issue until after trial. A trial judge may chose to withhold her ruling on a motion until after she hears the relevant trial evidence. We find this to be within the discretion of the trial court. We affirm the sanctions award and overrule issue 10.

### Conclusion

We reverse the judgment on the fraud damage award, the intentional infliction of emotional distress award, and the exemplary damages award, and render judgment that Beadle take nothing on these claims. We affirm the trial court's judgment with respect to the sanctions against Gaspard.