Opinion issued on May 31, 2002


 


 


 







In The

Court of Appeals

For The

First District of Texas






NO. 01-98-01388-CV






ELLEN FINLAY; GIESSEL, BARKER & LYMAN, INC.; AND KENNETH
STALLING, Appellants


V.


JENNY E. OLIVE, Appellee






On Appeal from the 127th District Court

Harris County, Texas

Trial Court Cause No. 96-44170






O P I N I O N

 Attorney Ellen Finlay, her client, Kenneth Stalling, and her law firm, Giessel,
Barker & Lyman, Inc., appellants, appeal the trial court's judgment levying sanctions
against them and shifting costs.

Background

 In August 1996, Jenny Olive filed suit against Kelsey-Seybold Medical Group
P.A. d/b/a Kelsey-Seybold Clinic, Caremark, Inc. d/b/a Kelsey-Seybold Clinic and
Kenneth Stalling (collectively "defendants"). (1) Jenny Olive was represented by
Richard Flowers with McEvily & Flowers. Kenneth Stalling was represented by
Ellen Finlay with Thompson & Knight when suit was filed and during most of
discovery, and later with Giessel, Barker & Lyman, Inc. (2) 

 Disagreements among counsel erupted as soon as discovery began. The parties
filed motions to compel, motions to quash, and objections to discovery requests; the
court's docket sheet reflects that the parties called the trial judge more than once to
resolve disputes that arose during depositions. Prior to trial, plaintiff filed motions
for sanctions for conduct related to (1) defendants' alleged refusal to produce Stalling
for deposition, (2) Finlay's alleged threats to sue the witness during the deposition of
a plaintiff's expert, Dr. Davis, (3) defendants' filing of a motion to exclude an audio
tape, and (4) Stalling's filing of a temporary injunction action in another district court
after the trial court ruled the audio tape was not the product of an illegal wiretap. The
first three of these motions were filed pursuant to Rule 215 of the Texas Rules of
Civil Procedure and Section 10 of the Texas Civil Practices & Remedies Code; the
fourth was filed pursuant to Rule 13 of the Texas Rules of Civil Procedure.

 The trial court held a series of pretrial hearings on April 8, 1998, May 27,
1998, and June 1, 1998, but expressly declined to hear plaintiff's motions for
sanctions at each of those hearings and instructed counsel to complete discovery and
come back if sanctions were still necessary. The trial court did not rule on any
motion for sanctions prior to trial. 

The trial


 Trial took place July 22 through August 14, 1998. On August 3, 1998, the trial
court found attorney Finlay in criminal contempt of court for asking questions during
cross-examination that the court found improper and designed to embarrass the
witness. On August 6, 1998, outside of the presence of the jury, the trial court heard
testimony from Flowers regarding evidence he proposed to present to the jury about
reasonable attorney's fees of $34,297 his client would be entitled to recover as a
patient or a former patient, if she prevailed in her suit against the defendant mental
health providers. See Tex. Civ. Prac. & Rem. Code Ann. § 81.004(b) (Vernon
1997). The attorney's fees in question were largely the attorney's fees plaintiff 
incurred as a result of the pretrial conduct complained of in her four prior motions for
sanctions. The court did not hear testimony from defendants on August 6, 1998. On
August 14, 1998, the jury returned a verdict favorable to the defendants. 

The September 8, 1998 Sanctions Order and Final Judgment


 On September 8, 1998, the trial court signed a Sanctions Order, Final
Judgment, and Order Adjudicating Contempt and Punishment. The September 8,
1998 Sanctions Order awards Olive $34,297 against Finlay, Stalling, and Giessel,
Barker & Lyman, Inc. as sanctions for violations of Texas Rule of Civil Procedure
215 and Chapter 10 of the Texas Civil Practices and Remedies Code. The Sanctions
Order recites that the trial court, during trial, heard evidence concerning discovery
abuse that occurred prior to trial, including evidence of (1) the threatening of a
witness with legal action related to an audio tape that was ultimately admitted into
evidence, (2) dilatory tactics employed by defendants requiring four motions to
compel the deposition of Stalling, and (3) the filing of a separate lawsuit to
circumvent rulings of the trial court concerning the audio tape. (3)

 The September 8, 1998 Final Judgment orders that Olive take nothing on her
claims, (4) that Olive recover "discovery" sanctions in the amount of $34,297 against
Stalling, Finlay, and Giessel, Barker & Lyman, Inc., and that Olive recover her costs
from defendant Stalling.

 The September 8, 1998 Final Order Adjudicating Contempt and Punishment
finds Finlay guilty of criminal contempt and assesses a fine of $500. (5)

Olive's Post-judgment motion for sanctions and 

the sanctions order for attorney's fees 


 Defendant Stalling, Finlay, and Giessel, Barker and Lyman, Inc. filed post-judgment motions seeking to reform the final judgment and sanctions order. Plaintiff
filed a post-judgment motion for sanctions related to Finlay's filing of a purported
post-judgment Rule 11 Agreement that plaintiff's counsel denied was legitimate. 
After a November 24, 1998 hearing, the trial court on December 22, 1998, entered its
Order that denied defendants' motions, granted plaintiff's motion to strike the Rule
11 Agreement and for sanctions, and ordered Stalling, Finlay, and Giessel, Barker &
Lyman, Inc., jointly and severally, to pay $450 attorney's fees to plaintiff's counsel,
McEvily & Flowers. The trial court's September 8, 1998 Final Judgment, the
September 8, 1998 Sanctions Order, and the December 22, 1998 Order granting post-judgment sanctions are the subject of this appeal.

Issues Presented

 In four issues on appeal, appellants assert the trial court erred: (1) in awarding
sanctions against them post-trial for alleged pre-trial discovery abuse and post-judgment conduct; (2) in ordering sanctions against Stalling, the defendant/client in
particular, an innocent party; (3) in ordering sanctions against trial attorney Finlay's
law firm, Giessel, Barker, and Lyman, Inc., in particular; and (4) in shifting Olive's
costs of court to the prevailing party, Stalling.

Standard of Review

 We review a trial court's sanctions award for abuse of discretion. Downer v.
Aquamarine Operators, Inc., 701 S.W.2d 238, 241 (Tex. 1985). The test is whether
the court acted without reference to any guiding rules and principles, i.e., whether the
act was arbitrary and unreasonable. Id. At 242. 




Analysis

Sanctions for pre-trial conduct

 The September 8, 1998 Sanctions Order, which was incorporated into the Final
Judgment, was expressly based on the trial court's finding that appellants violated
Chapter 10 of the Texas Civil Practices and Remedies Code and Texas Rule of Civil
Procedure 215. When an order of sanctions refers to one specific rule, either by citing
the rule, tracking its language, or both, we are confined to determining whether the
sanctions are appropriate under that particular rule. Metzger v. Sebek, 892 S.W.2d 20,
51 (Tex. App.--Houston [1st Dist.] 1994, writ denied).

 Chapter 10 of the Civil Practices and Remedies Code provides two ways to
initiate sanctions proceedings concerning frivolous pleadings and motions: (1) a
party-initiated motion, as authorized by section 10.002(a), describing specific conduct
in violation of section 10.001, or (2) a court-initiated motion with a show cause order
from the court, as authorized by section 10.002(b). Here, the trial court never issued
a show cause order. On May 13, 1998, plaintiff filed a pretrial motion for sanctions
complaining about a separate lawsuit filed by defendants in an attempt to negate the
trial court's pretrial ruling on evidence admissibility. Section 10.003 requires that
"[t]he court shall provide a party who is the subject of a motion for sanctions under
Section 10.002 notice of the allegations and a reasonable opportunity to respond to
the allegations." No notice of hearing was given to defendants, and no hearing under
Section 10.003 was conducted. Further, no ruling was made on the motion for
sanctions before trial started. (6)

 Plaintiffs also alleged that defendants violated Texas Rule of Civil Procedure
215, which prohibits abuse of the discovery process. Sanctions for discovery abuse
under Rule 215 may be imposed only after notice and hearing. Tex. R. Civ. P. 215.3;
See Jefa Co. v. Mustang Tractor and Equip. Co., 868 S.W.2d 905, 909 (Tex.
App.--Houston [14th Dist.] 1994, writ denied) (due process requires that a party be
given an adequate opportunity to be heard). As noted above, the court declined to
hear plaintiff's sanctions motions prior to trial. The only hearings that
appellee/intervenor points to as "sanctions hearings" occurred during trial on August
6, 1998, and post-trial on September 8, 1998 and November 24, 1998. 

 The transcripts of those hearings make clear that none constituted a sanctions
hearing. On September 8, 1998, the trial judge stated "[t]his is the final judgment. 
This isn't a hearing." The November 24, 1998 hearing occurred well after entry of
the Sanctions Order and Final Judgment and clearly did not constitute a sanctions
hearing. That leaves only the trial proceedings of August 6, 1998 as possibly
including a sanctions hearing. On that day, the trial court heard testimony as to
plaintiff's attorney's fees, but did not hear testimony or argument regarding the
underlying facts plaintiff was relying upon to justify sanctions. The docket sheet
notes only that evidence was heard on that date relating to attorney's fees; it does not
mention a hearing on sanctions. Moreover, the record does not contain any notice
that sanctions would be heard on August 6, 1998. Because there was no sanctions
hearing, the trial court abused its discretion in imposing sanctions against appellants. 

 The result would be the same even if the August 6, 1998 proceeding was
intended as a sanctions hearing. (7) Sanctions for alleged violations known to movants
before trial are waived if a hearing and ruling are not secured pretrial. See Remington
Arms Co. v. Caldwell, 850 S.W.2d 167, 170 (Tex. 1993) (failure to obtain pretrial
ruling on discovery disputes existing before commencement of trial constitutes
waiver of any claim for sanctions based on that conduct). 

 In Remington Arms, of 12 incidents of misconduct cited in the sanctions order,
nine concerned pretrial conduct of which the movant was aware before trial. Id. In
the instant case, all of the conduct noted in the September 8, 1998 Sanctions Order
occurred, and was known to plaintiff, pretrial. It is true that plaintiff filed her motions
for sanctions prior to trial, but there was no pretrial hearing or pretrial ruling on any
sanctions motion in a situation where the relevant evidence was shown only during
trial.

 This Court has ruled that it is not an abuse of discretion for a judge to postpone
ruling on a sanctions motion until after trial. Gaspard v. Beadle, 36 S.W.3d 229, 240
(Tex. App.--Houston [1st Dist.] 2001, pet. denied) (trial judge may postpone ruling
on motion until after relevant trial evidence is heard). Gaspard simply provides an
example of Remington Arms' exception for abuse "revealed for the first time during
. . . trial." Remington Arms, 850 S.W.2d at 170. Gaspard involved a sanctions
motion filed under Rule 13 alleging a plaintiff's petition to be groundless and in bad
faith. 36 S.W.3d at 240. Gaspard sued his former girlfriend for libel and slander. Id. 
Only during trial did Gaspard admit under oath that he had no evidence of any
damage to his reputation when he filed his defamation claim. Id. The trial court had
carried the defendant's pre-trial motion for sanctions until it could hear the relevant
trial testimony - - the essence of Gaspard's cause of action - - and consider whether
the pleading itself was frivolous. Id. By contrast, in the case before us, the pre-trial
conduct matters at issue in Olive's sanctions motions were all complete before trial;
no trial testimony was needed to determine whether improper conduct known before
trial warranted sanctions. By requiring a pretrial ruling on existing pretrial disputes,
the parties are better able to organize and present their cases without surprise. To
postpone rulings on completed pre-trial matters, where trial pleadings in the case are
not at issue, and where trial testimony has no bearing on the sanctions dispute, would
be to violate the very essence of Remington Arms.

 We hold that Olive waived her right to Chapter 10 and Rule 215 sanctions by
failing to request and obtain a pretrial hearing on her sanctions motions for matters
that were known to her after her depositions were completed, but before trial. For the
reasons discussed above, we sustain appellants' first issue to the extent it relates to
sanctions of $34,297 against Stalling, Finlay, and Giessel, Barker & Lyman, Inc. for
pretrial discovery abuse.

Post-judgment sanctions against Stalling, Finlay, and Giessel, Barker & Lyman,
Inc.

 

 We next consider the December 22, 1998 order assessing a sanction of $450
against appellants in favor of Olive's counsel for post-judgment conduct.

 While still Olive's attorney of record, Flowers filed a motion to strike and
request for sanctions against appellants because of an instrument Finlay filed on or
about September 14, 1998, after entry of the Final Judgment and Sanctions Order on
September 8, 1998. Olive's motion alleged that Finlay filed what she represented to
be a Rule 11 agreement among counsel; that the instrument filed was merely her
counter-proposal of an agreement; that her signing of it was an intentional
misrepresentation; and that its filing was groundless, done in bad faith, and needlessly
increased the cost of litigation.

 Following a hearing on November 24, 1998, the trial court found the
allegations of the sanctions motion true, struck Finlay's purported Rule 11
"agreement", and levied a monetary sanction of $450 attorney's fee against Stalling,
Finlay, and Giessel, Barker & Lyman, Inc., to be paid directly to McEvily & Flowers
as reasonable and necessary attorney's fees for the preparation and presentation of
Olive's motion to strike and for sanctions.

Post-judgment sanctions against Stalling, the defendant/client

 A client should not be sanctioned for his attorney's conduct unless the client
is implicated apart from having entrusted legal representation to counsel. Metzger v.
Sebek, 892 S.W.2d 20, 52-53 (Tex. App.--Houston [1st Dist.] 1994, writ denied). 
A "just" sanction must be leveled against the actual offender, not an innocent party. 
Id. Nothing in the record indicates that Stalling directed his attorney, Finlay, to file
the purported post-judgment Rule 11 agreement. The trial court therefore erred in
awarding the post-judgment sanction of $450 against Stalling. Appellant's first issue
is sustained as to appellant Kenneth Stalling, and the Order assessing a sanction of
$450 against him is reversed and rendered.

 Finlay argues that the filing of a Rule 11 Agreement, which was later found to
be unenforceable, cannot be grounds for sanctions, relying on Laub v. Pesikoff, 979
S.W.2d 686, 693 (Tex. App.--Houston [1st Dist.] 1998, pet. denied). Finlay's
reliance on Laub is misplaced. In Laub, this Court recognized that an argument that
is unsuccessful is not necessarily groundless. Id. Here, the trial court found not only
that Finlay's letter was unenforceable, but also that it was filed in bad faith and
caused needless increase in the cost of litigation. Although by November 24, 1998,
McEvily & Flowers no longer represented Olive, they represented her at the time the
purported Rule 11 Agreement was filed and when the motion to strike and for
sanctions was prepared and filed. Although there was no testimony regarding the
number of hours plaintiff's counsel spent in preparation and presentation of the
motion for sanctions, the trial court had previously heard testimony that Flowers' rate
was $250 per hour. The trial court also had Finlay's letter and the motion Flowers
prepared before it. There was sufficient evidence to support the $450 sanction
against Finlay. See Jefa Co., 868 S.W.2d at 910 (court is entitled to consider entire
history of case in making a decision on sanctions).

 Giessel, Barker & Lyman, Inc. also argue that the trial court abused its
discretion in assessing sanctions against them because (1) Finlay was employed "of
counsel" with the firm when the document was filed, (2) she was not acting as a vice
principal for the firm or with its authorization, and (3) the firm did not ratify her
actions. The firm contends that the rules under which Finlay was sanctioned
contemplate sanctions only against an attorney or the attorney's client, but not the
attorney's law firm. 

 Appellants have not cited any case specifically holding that Chapter 9, Chapter
10, or Rule 215 sanctions may not be awarded against a law firm in addition to the
attorney/employee who signs a pleading, when that law firm's name is on the
pleading or filing. Here, Finlay testified at the November 24, 1998 hearing that she
filed the purported Rule 11 agreement under the specific law firm title of Giessel,
Barker, & Lyman, Inc. We conclude that a law firm may be sanctioned for
groundless pleadings filed on its behalf by an attorney employed with the firm. (8)

 Finally, appellants argue that the trial court abused its discretion in awarding
the $450 to intervenor /appellee McEvily & Flowers when they no longer represented
Olive.

 Although McEvily & Flowers no longer represented Olive by November 24,
1998, they represented her at the time the purported Rule 11 Agreement was filed,
and when the motion to strike and for sanctions was prepared and filed. Furthermore,
McEvily & Flowers had filed a motion to intervene in its own right before the
December 22, 1998 sanction was awarded, although the trial court does not reflect a
ruling on this motion. 

 We conclude the trial court did not abuse its discretion in assessing the $450
sanction against both appellants Finlay and Gissel, Barker & Lyman. We sustain
appellants' first issue, except for the December 22, 1998 Order's imposition of $450
in sanctions against Finlay and Giessel, Barker & Lyman, Inc.

 Because appellant's first issue disposes of all matters concerning pre-trial and
post-judgment sanctions, we need not address appellants' second and third issues, 
which separately urge additional reasons why the levy of pre-trial sanctions against
Stalling and Giessel, Barker and Lyman, Inc., was improper. 



The assessment of costs against Stalling, the prevailing party

 Appellant's fourth issue asserts the trial court erred in shifting responsibility
for Olive's costs to Stalling. 

 There is no dispute that Stalling was a prevailing party at trial. The Final
Judgment holds that Olive shall take nothing from defendants, including Stalling, as
the result of her claims. Texas Rule of Civil Procedure 131 sets forth the general rule
that the prevailing party shall recover costs; Texas Rule of Civil Procedure 141
provides an exception to the general rule for good cause stated on the record. There
is no statement of good cause contained either in the final judgment or in the
transcript of the September 8, 1998 proceeding for entry of the final judgment. This
Court requires that the Rule 141 statement of good cause appear on the face of the
record; we do not presume that the trial court made the necessary finding in this
situation. See Marshall Investigation & Sec. Agency v. Whitaker, 962 S.W.2d 62, 63
(Tex. App.--Houston [1st Dist.] 1997, no pet.). 

 Intervenor McEvily & Flowers does not direct us to any finding on the record
regarding good cause to vary from Rule 131. We have scrutinized the transcript from
the September 8, 1998 entry of judgment proceeding and the Final Judgment itself,
and it is clear that the trial court did not make such a finding. In fact, the allocation
of costs was not addressed at all. See Rogers v. Walmart Stores, Inc., 686 S.W.2d
599, 601 (Tex. 1985) (appellate court should scrutinize record to determine if it
supports trial judge's decision to tax costs to prevailing party). Failure to state on the
record a finding of good cause to vary from Rule 131 constitutes an abuse of
discretion. See State v. B & L Landfill, Inc., 758 S.W.2d 297, 300 (Tex.
App.--Houston [1st Dist.] 1988, no writ). 

 We sustain appellants' fourth issue and reverse the trial court's judgment that
Olive recover her costs from Stalling. We reform the judgment as to costs because
the record does not reflect any stated reason for assessing costs against the successful
party, as required by Rules 131 and 141. Neal v. Ardoin, 594 S.W.2d 145, 147 (Tex.
App.--Houston [1st Dist.] 1979, no writ) (reforming judgment as to costs because
record does not reflect any stated reason for assessing costs against successful party). 

Conclusion

 The Final Judgment is reversed as to Olive's recovery of $34,297 from Stalling,
Finlay, and Giessel, Barker & Lyman, Inc. and judgment is rendered that Olive take
nothing as sanctions for pre-trial discovery conduct. The Final Judgment is further
reversed as to the award of post-judgment sanctions against Stalling, and is reformed
to award $450 in attorney's fees to be paid by Finlay and Giessel, Barker & Lyman,
Inc., jointly and severally, to McEvily and Flowers. The Final Judgment is further
reversed as to Olive's recovery of costs from Stalling, and is reformed to award
recovery of costs to Stalling, the prevailing party. In all other respects, the judgment
remains intact. 


 



 Lee Duggan, Jr.

 Justice


Panel consists of Justices Mirabal, Jennings, and Duggan. (9)

Publish. Tex. R. App. P. 47.
1. Olive sued defendants for negligent treatment and other claims arising out of
an alleged sexual relationship she had with Stalling, her therapist. Tex. Civ.
Prac. & Rem. Code Ann. § 81.002 (Vernon 997).
2. Finlay was affiliated with Thompson & Knight when the lawsuit commenced
but became affiliated with Giessel, Barker & Lyman, Inc. shortly before the
trial in 1998. The Kelsey-Seybold entities were represented at trial by Jeffrey
McClure with Mayor, Day, Caldwell & Keeton, L.L.P. Neither the Kelsey-Seybold entities, nor their trial counsel, are parties to this appeal.
3. Although Olive alleged this to be a Chapter 13 violation, the trial court recited
in the Order it was a Chapter 10 violation.
4. Olive has not appealed the take-nothing judgment rendered on her claims.
5. The contempt order is not at issue in this appeal.
6. Even if monetary sanctions could be levied against attorney Finlay and the law
firm for the filing of the separate lawsuit "to circumvent rulings by this court,"
as the Sanctions Order recited, Section 10.004(d) prohibits the award of
monetary sanctions against Stalling, "a represented party," for such pleading.
7. The trial judge apparently considered, at least in retrospect, August 6, 1998, to
be a sanctions hearing. The Sanctions Order states that the trial court heard
evidence on sanctions "during the trial of the cause," and at the September 8,
1998 proceeding the trial judge said "I'm just announcing my ruling from a
hearing held during the trial . . .." 
8. Numerous other Texas decisions have involved sanctions in which law firms
were sanctioned as an entity for acts committed by employees. See, e.g., Kiefer
v. Continental Airlines, Inc., 10 S.W.3d 34, 41 (Tex. App.--Houston [14th
Dist.] 1999, pet. denied) (affirming a sanction against a law firm for
introducing certain witnesses at a hearing on a motion for new trial); Susman
Godfrey, L.L.P. v. Marshall, 832 S.W.2d 105, 109 (Tex. App.--Dallas 1992,
orig. proceeding) (determining that a law firm was not entitled to mandamus
relief for $25,000 sanction imposed on it for violation Texas Rules of
Procedure 13 and 215).
9. The Honorable Lee Duggan, Jr., retired Justice, Court of Appeals, First 

 District of Texas at Houston, participating by assignment.