Jerry **MOORE** and Jean H. Moore, Houston States Associates, Marshall S. Cogan, and Stephen C. Swid, Appellants,

v.

**BANK MIDWEST, N.A.,** Appellee.

No. 01–98–00717–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 15, 2001.

John H. Boswell, Steven J. Watkins, Denice Smith, Joe M. Roden, Houston, for appellant.

C. Henry Kollenberg, Jr., Houston, for appellee.

Panel consists of Justices COHEN, NUCHIA, and SMITH.*

### OPINION ON MOTION FOR REHEARING

SMITH, Justice (Retired).

Our opinion of November 30, 2000 is withdrawn and the following opinion is substituted. Counsel for appellants Jerry and Jean H. Moore and counsel for appellants Houston States Associates, Marshall S. Cogan, and Stephen C. Swid filed motions for rehearing; those motions are denied.

Jerry and Jean H. Moore, and Houston State Associates, Marshall S. Cogan, and Stephen C. Swid (collectively "HSA") ap-

---

* The Honorable Jackson B. Smith, retired Justice, Court of Appeals, First District of Texas

peal a judgment awarding Bank Midwest, N.A. $221,032.09 for the deficiency balance on a promissory note, plus attorney's fees, including appellate attorney's fees, of $78,230.

### Facts and Procedural Background

In 1980, the Moores purchased 1½ blocks of land containing three buildings in midtown Houston, an area just south of the central business district. To finance the purchase, the Moores signed a promissory note payable to Gibraltar Savings Association in the principal amount of $2,475,000 and delivered a deed of trust on the property to Gibraltar Savings Association securing payment of the note. The note states:

> Notwithstanding anything to the contrary contained herein or in any instrument evidencing or securing this note, the Makers shall, upon the maturity of this note, whether by acceleration or otherwise, be personally liable for the payment of twenty percent (20%) of the outstanding principal balance hereof including all interest accrued thereon, and all other sums due thereunder.

The deed of trust states:

> Notwithstanding anything to the contrary contained in the Note secured hereby, this Deed of Trust or any other instrument evidencing or securing the Note, the Grantors shall, upon the maturity of the Note, whether by acceleration or otherwise, be personally liable for the payment of twenty percent (20%) of the outstanding balance thereof, including all interest thereon, and all other sums due thereunder.

In December 1981, the Moores sold the property to HSA. The Moores, as grantor, delivered a general warranty deed to HSA, as grantee, that states:

> (b) The Grantee assumes and promises to pay that certain promissory note dated July 1, 1980, in the principal amount

at Houston, participating by assignment.

of $2,475,000.00 executed by the Grantors payable to Gibraltar Savings Association, which promissory note is secured by a vendor's lien and superior title retained in a deed of even date, duly filed in the Official Public Records of Real Property of Harris County, Texas under Clerk's file No. G6136636 and by a deed of trust of even date to John T. Simms, Trustee, duly filed in the Official Public Record of Real Property of Harris County, Texas under Clerk's file No. G613635. It is expressly agreed and stipulated that the personal liability of Grantee for the assumption described above shall be limited in the aggregate to the amount of twenty (20%) percent of the outstanding principal balance thereof, including all interest accrued therein, and all other sums due thereunder.

The Moores also delivered to HSA a deed of trust to secure assumption, which states:

Notwithstanding anything to the contrary contained herein or in the $2,475,000.00 Promissory Note or any instruments securing said Note, Grantor shall be personally liable for the assumption of the agreement to pay the $2,475,000.00 Promissory Note and for the assumption of and agreement to perform the covenants and obligations of the 1980 Deed of Trust and any other instrument securing the $2,475,000.00 Promissory Note only to the extent of twenty percent (20%) of the outstanding principal balance thereof, including all interest thereon, and all other sums due thereunder.

In 1990, HSA sold the property to MGM Real Estate Management, Inc.; however, MGM did not assume or promise to pay the balance due on the July 1, 1980 promissory note. MGM commenced making payments on the note in 1990 and paid through May 1, 1996. The June 1, 1996 payment was not made, and MGM abandoned the property.

The appellee bank acquired the note in 1995 and successfully petitioned the court to appoint a receiver to manage the property commencing June 24, 1996. On September 25, 1996, the bank accelerated the note and, on April 1, 1997, foreclosed on the property. It then purchased the property at the foreclosure sale for $1,160,000.

When the bank sued the Moores for the deficiency balance remaining on the note, the Moores filed a third-party complaint against HSA. HSA has not disputed its liability to the Moores and has not appealed the judgment against it for all amounts for which the Moores are liable to the bank.

Pursuant to Texas Property Code section 51.003(b),[1] the Moores and HSA requested that a jury determine the fair market value of the property as of the date of foreclosure. Under section 51.003(b), the defendant is entitled to offset the jury's finding of fair market value, instead of the foreclosure sale price, against the amount due on the note.

The question submitted to the jury was: "What do you find to be the fair market value of the real property at issue as of April 1, 1997?" The jury answered "$1,450,000.00." The jury was also asked to find the amount of reasonable fees for the necessary services of the bank's and the

---

1. § 51.003 Deficiency Judgment

\* \* \*

(b) Any person against whom such a recovery is sought by motion may request that the court in which the action is pending determine the fair market value of the real property as of the date of the foreclosure sale. The fair market value shall be determined by the finder of fact after the introduction by the parties of competent evidence of the value. Competent evidence of value may include, but is not limited to, the following: (1) expert opinion testimony; (2) comparable sales; (3) anticipated marketing time and holding costs; (4) cost of sale; and (5) the necessity and amount of any discount to be applied to the future sales price or to the cashflow generated by the property to arrive at a current fair market value.

Moores' attorneys. No question on HSA's attorney's fees was submitted to the jury.

Based on the jury's findings, and deducting the credits due the Moores, the trial court signed a judgment awarding the bank $221,032.09 and awarding the bank and the Moores attorney's fees. The judgment also awarded the Moores recovery from HSA of all amounts for which the Moores were liable to the bank.

### Issues Presented by Moores

■ In their first issue, the Moores assert that the trial court erred by overruling the Moores' Motion to Disregard the Jury's Finding and Motion for Judgment Notwithstanding the Verdict because the evidence conclusively proved as a matter of law that the fair market value of the subject properties on April 1, 1997 was at least $2,340,000.

■ In reviewing the denial of the judgment notwithstanding the verdict, the court must first examine the record for evidence that supports the jury's finding and disregard all evidence to the contrary. *CDB Software, Inc. v. Kroll,* 992 S.W.2d 31, 36 (Tex.App.—Houston [1st Dist.] 1998, pet. denied). Only if there is no evidence that supports the finding does the court look to see if the contrary proposition was established as a matter of law.[2] *Id.*

Pursuant to Texas Property Code section 51.003, fair market value must be determined as of the date of foreclosure. The bank's expert, Thomas Kirby, prepared an appraisal as of January 3, 1997. Thus, the Moores argue, the bank presented no evidence of fair market value as of April 1, 1997, the date of foreclosure.

Kirby testified that the value of the property on January 3, 1997 was $1,450,000.00. He stated that nothing happened between January 3, 1997, the date

of his appraisal, and April 1, 1997, the date of foreclosure, that would alter his opinion. Kirby also testified that his written appraisal, although dated January 3, 1997, accurately reflected his opinion of value as of April 1, 1997. Kirby told the jury that the "price that would be agreed to between the buyer and the seller would be the $1,450,000.00." Kirby further testified that the "net realizable value" of the property as of April 1, 1997, was derived by deducting holding costs and sales commission from the market price of $1,450,000.

Kirby's oral testimony linked his January 3, 1997 appraisal to the relevant issue of fair market value as of April 1, 1997. This testimony was relevant and admissible. The cases cited by the Moores to support their position are not factually similar enough to the instant case to be of much assistance. The cases cited illustrate situations in which the gap between the date of a value opinion and the relevant date for determining value was so great that the opinion was not competent evidence. In this case, Kirby closed the gap by testifying that nothing that would affect value occurred between January 3, 1997 and April 1, 1997.

In addition to Kirby's testimony, the court-appointed receiver, Patrick Hicks, provided evidence of the fair market value of the property. Hicks said: "I guess a buyer would pay anywhere around a million to a million five" for the property as of April 1, 1997. There was no objection to the testimony of Hicks at trial and no complaint about it on appeal.

Having determined that there was some evidence to support the jury's finding of fair market value, it is not necessary to address the second prong of the review, i.e., whether a contrary proposition was established as a matter of law.

---

**2.** The Moores propose that this court follow a revised standard of review purportedly established by *Provident American Ins. Co. v. Castaneda,* 988 S.W.2d 189 (Tex.1998). The Moores contend that the Supreme Court, in *Castaneda,* looked at *all* the evidence to deter-

mine whether a j.n.o.v. was warranted. We need not determine whether *Castaneda* in fact alters the standard of review. An expanded scope of review would not render a different result in this case because the evidence contrary to the verdict was not undisputed.

The Moores' first issue is overruled.

■ In their second issue, the Moores contend that the trial court erred by overruling their motion for a new trial because the jury's determination that the fair market value of the property was $1,450,000 on April 1, 1997 was against the great weight and preponderance of the evidence.

■ After considering and weighing all of the evidence, this court should set aside the verdict and grant a new trial only if the evidence is so weak or the finding so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *State Indus., Inc. v. Corbitt,* 925 S.W.2d 304, 306 (Tex.App.—Houston [1st Dist.] 1996, no writ). The appellate court cannot substitute its opinion for that of the trier of fact and determine that it would reach a different conclusion. *Id.*

The Moores' expert, James Woodson, testified that the fair market value of the property, as of April 1, 1997, was $2,646,000. HSA's expert, David Lewis, testified that the fair market value of the property, as of April 1, 1997, was $2,340,000.

The testimony of Woodson and Lewis did not go undisputed. Kirby criticized Woodson's opinion because it did not account for certain deductions from value, specifically rent loss, lease-up, and tenant improvement. He also criticized Lewis's opinion because Lewis used superior office buildings as comparables, which, in Kirby's opinion, resulted in Lewis's giving inflated value to the property.

The jury was free to accept Kirby's testimony instead of that from Woodson and Lewis. *Rego Co. v. Brannon,* 682 S.W.2d 677, 680 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.).

The court instructed the jury on the definition of fair market value.[3] The jury's assignment was to consider all of the information presented to it and to determine a value that fit the definition. The jury heard evidence of a range of values from $1,000,000 to $2,646,000. Kirby's testimony was that $1,450,000 was "the price that would be agreed to between the buyer and the seller." The jury's finding of fair market value was within the range of values supported by the evidence, and it should not be overturned. *See State v. Huffstutler,* 871 S.W.2d 955, 959 (Tex.App.—Austin 1994, no writ) (in a condemnation case, the jury is allowed to set the value at any amount between the highest and lowest values the expert witnesses put in evidence).

The Moores' second issue is overruled.

■ In their third issue, the Moores assert that the trial court reversibly erred by admitting plaintiff's exhibit 7 and Patrick Hicks' testimony regarding the terms of exhibit 7 because (1) exhibit 7 is an unconsummated earnest money contract that allows the putative purchaser to renege by forfeiting the earnest money; and (2) exhibit 7 is irrelevant to the issue of the fair market value of the properties on April 1, 1997.

Exhibit 7 is an earnest money contract for the sale of the property for $1,400,000. The contract was executed in November 1997, approximately eight months after the date of foreclosure, and the sale had not closed at the time of trial in February 1998, although the contract was still in effect, was scheduled to close no later than February 27, 1998, and placed $50,000 of the buyer's money at risk as earnest money.

■ The admission and exclusion of evidence is committed to the trial court's sound discretion. A party seeking reversal based on evidentiary error must show that the error probably resulted in the rendition of an improper judgment. *Sosa*

---

3. "You are instructed that the fair market value means the price the property will bring when offered for sale by one who desires to sell, but is not obliged to sell, and is bought by one who desires to buy, but is under no necessity of buying."

*v. Koshy*, 961 S.W.2d 420, 428 (Tex.App.— Houston [1st Dist.] 1997, pet. denied); *Merckling v. Curtis*, 911 S.W.2d 759, 772 (Tex.App.—Houston [1st Dist.] 1995, writ denied).

The Moores argue that an earnest money contract can never be competent evidence of value because it is merely an option contract. The Moores rely heavily on *State v. Williams*, 357 S.W.2d 799 (Tex. App.—Texarkana 1962, writ ref'd n.r.e.). *Williams* holds that an option contract is not competent evidence of value. *Id.* at 802. *Williams* does not hold that a sales contract that can be avoided by forfeiture of earnest money is always an option contract. The opinion in *Williams* does not explain what characteristics of the letter agreement before it were determinative of the court's finding that it was an option contract.

This Court in *State v. Clevenger*, 384 S.W.2d 207, 210 (Tex.Civ.App.—Houston 1964, writ ref'd n.r.e.), found that a valid earnest money contract is admissible as evidence of value because it is a binding contract. In *Clevenger*, the fact that the down payment would be forfeited as liquidated damages if the buyer failed, refused, or was unable to consummate the contract did not convert the contract into a mere option. *Clevenger*, 384 S.W.2d at 210. In *Clevenger*, nothing but the final consummation of the sale remained to be done, while, as the *Clevenger* court noted, in *Williams* the agreement was in letter form and was an option to buy, not an earnest money contract. *Id.* The contract in the instant case appears to be similar in nature to that at issue in *Clevenger*; the sales price was agreed upon, inspections were complete, and the closing of the sale was only 10 days away.

Before exhibit 7 would be admissible, it must be relevant to the issue at hand, i.e., the fair market value of the property as of April 1, 1997. There is no evidence as to the similarity or dissimilarity of market conditions between November 11, 1997, the effective date of plaintiff's exhibit 7, and April 1, 1997, the date of foreclosure. Absent such evidence, plaintiff's exhibit 7 is not relevant. *Cf. Clevenger*, 384 S.W.2d at 209 (comparable sales were subsequent to the date of taking, but there was evidence that there was no significant rise in prices in the interim); *Williams*, 357 S.W.2d at 801 (as noted in the opinion prior to rehearing: "There is authority for the admission of evidence of sales of comparable land made subsequent to the date of condemnation where the sales considered involve land that was not benefitted or its market value affected by the public improvement causing the condemnation.").

The bank asserts that counsel for HSA opened the door for admission of plaintiff's exhibit 7 by asking Hicks questions about rental rates in the area after the date of foreclosure. A party opens the door to the admission of otherwise objectionable evidence offered by the other side when it "introduces the same evidence or evidence of a similar character." *Southwestern Elec. Power Co. v. Burlington Northern R.R.*, 966 S.W.2d 467, 473 (Tex. 1998). The testimony the bank contends opened the door to plaintiff's exhibit 7 related to rental rates in the midtown area during the 12 months prior to trial. Rental rates for the property are not "the same or of a similar character" as the fair market value of the property. Rental rates may have a bearing upon fair market value, but they are not the same.

We hold that the trial court erred in allowing the admission of plaintiff's exhibit 7 into evidence. However, a new trial is warranted only if the admission of plaintiff's exhibit 7 probably caused the rendition of an improper judgment. TEX. R.APP. P. 44.1(a)(1). The jury's verdict was within $50,000 of the sale price set by plaintiff's exhibit 7, but the jury's verdict was *exactly* the same as the market value testified to by the bank's expert, Kirby. We decline to hold that the admission of plaintiff's exhibit 7 caused an improper judgment because it appears more likely

that the jury was influenced by Kirby's testimony, and that of the court-appointed receiver, Hicks, than by plaintiff's exhibit 7.

The Moores' third issue is overruled.

■ The Moores' fourth issue is that the trial court erred by overruling the Moores' Motion for New Trial and Motion to Modify, Correct or Reform the Judgment because the Moores' portion of the deficiency, if any, is $44,206.42, not $221,032.09.

■ The only issue presented to the jury (other than the reasonable amount of attorney's fees) was the fair market value of the property. The amount of the deficiency was determined by the court as a matter of law because there were no allegations that the note and deed of trust were ambiguous. *See MJR Corp. v. B & B Vending Co.*, 760 S.W.2d 4, 9–10 (Tex. App.—Dallas 1988, writ denied). The appellate court, as the final arbiter of the law, has the duty to independently evaluate the trial court's legal findings. *Id.* at 10.

The note and the deed of trust establish the maximum amount of the Moore's liability:

Notwithstanding anything to the contrary contained herein or in any instrument evidencing or securing this note, the Makers shall, *upon the maturity of this note, whether by acceleration or otherwise,* be personally liable for the payment of twenty percent (20%) of the outstanding principal balance hereof in-

cluding all interest accrued thereon, and all other sums due thereunder.[4]

(emphasis added).

The outstanding principal balance at the time of the maturity of the note was $1,661,065. The foreclosure sale price was $1,160,000, but the jury found the fair market value to be $1,450,000. When the jury's finding and other offsets were deducted from the balance due at the time of foreclosure, a balance of $221,032.09 was due and owing by the Moores.[5]

When the Moores' liability is computed by the terms of maximum liability stated in the note and deed of trust, it is 20% of the outstanding principal balance and interest due upon the maturity of the note. Twenty percent of that figure is at least $332,213, i.e., 20% of $1,661,065. Because the deficiency is less than the maximum amount of the Moores' agreed liability, the trial court awarded the bank 100% of the deficiency, that is, $221,032.09.

The Moores contend that the 20% limitation should be applied to the $221,032.09 deficiency amount and they owe only $44,206.42. We disagree. The note provides for "the payment of twenty percent (20%) of the outstanding principal balance" "upon the maturity of this note, whether by acceleration or otherwise...." The note became mature upon acceleration. Thus, the Moores owed 20% of the amount then due. The note is unambiguous. It does not provide for payment of "twenty percent (20%) of the deficiency remaining after foreclosure."

The Moores' fourth issue is overruled.

4. Substantially identical language appears in the deed of trust.

5. The Moores and HSA appeal the trial court's application of the 20% limitation on liability under the note, arguing that the judgment should be for $44,206.42, i.e., 20% of $221,032.09. On rehearing, HSA asserts that the undisputed principal balance on the note at maturity was $1,597,084.92; the principal balance plus interest at maturity was $1,793,788.28; the judgment incorrectly accounts for statutory credits; and the correct amount of the judgment is $41,215.86. First, HSA's figures are not undisputed. The bank and the Moores agree that the balance due at maturity of the note was $1,661.065. Second, HSA did not raise these points on appeal. Thus, while HSA may have preserved error on these points below, HSA has waived these points on appeal and we will not consider them on rehearing.

In their fifth issue, the Moores assert that the trial court erred by overruling the Moores' Motion for New Trial and Motion to Modify, Correct or Reform the Judgment because the judgment erroneously awards appellate attorney's fees and the interest thereon.

■ The Moores argue that the judgment's unconditional award of appellate attorney's fees is erroneous. An award of appellate attorney's fees in a trial court judgment must be conditioned on an unsuccessful appeal. *Siegler v. Williams,* 658 S.W.2d 236, 241 (Tex.App.—Houston [1st Dist.] 1983, no writ). This point is moot because the Moores have in fact been unsuccessful in this appeal.

■ The Moores also argue that the court erred in awarding interest on appellate attorney's fees from the date of judgment, instead of from the date of filing the notice of appeal. Interest on appellate attorney's fees is intended to be directly connected to the pursuit of an unsuccessful appeal. The bank cannot collect interest on money before it is owed. *O'Farrill Avila v. Gonzalez,* 974 S.W.2d 237, 250 (Tex.App.—San Antonio 1998, pet. denied). For this reason, the Moores' issue regarding interest on appellate attorney's fees is sustained. The judgment should be reformed to reflect that interest on appellate attorney's fees shall run from June 26, 1998, the date of the notice of appeal, for fees attributed to this appeal, from the date of filing any petition for review by the Supreme Court for fees triggered by that

event, and from the date of granting any petition for review for fees triggered by that event.[6]

■ In their sixth issue, the Moores allege the trial court erred by awarding the Moores interest on attorney's fees against HSA at 6% instead of at 18% interest because Bank Midwest recovered attorney's fees from the Moores at 18% interest, and the Moores are entitled to judgment over against HSA for any sums the Moores owe Bank Midwest on the note.

The judgment awards the bank 18% interest on its attorney's fees from the Moores.[7] The judgment also awards the Moores a full recovery from HSA for all sums the Moores owe to the Bank. The judgment further awards the Moores recovery of attorney's fees from HSA with 6% interest from the date of judgment.

The Moores do not cite any basis for an award of 18% interest on their attorney's fees other than that it is the rate awarded to the bank. There is no reason why the interest rate on the Moore's attorney's fees must be the same as the interest rate on the bank's attorney's fees.[8] Absent evidence of a contractual agreement between the Moores and HSA imposing an 18% interest rate in favor of the Moores in any suit against HSA, the court did not err in setting the interest rate at 6%. *See* Act of May 24, 1997, 75th Leg., R.S., ch. 1008 § 1, sec. 302.002, 1997 Tex. Gen. Laws 3091, 3422 (amended 1999) (current ver-

---

6. The success of the Moores on this one point does not mandate remand or modification of the award of appellate attorney's fees. In *Goldman v. Alkek,* 850 S.W.2d 568, 577–78 (Tex.App.—Corpus Christi 1993, no writ), and *Southwestern Bell Tel. Co. v. Vollmer,* 805 S.W.2d 825, 834 (Tex.App.—Corpus Christi 1991, writ denied), *overruled on other grounds, Houston Lighting & Power Co. v. Auchan USA, Inc.,* 995 S.W.2d 668 (Tex. 1999), cited by the Moores, the appellants were successful on substantive points of appeal as well as on their points attacking the award of appellate attorney's fees.

7. The Moores and HSA did not appeal the 18% interest rate. We will not consider HSA's argument, raised for the first time on rehearing, that the award of 18% interest is error.

8. As stated above, the judgment awards the Moores full recovery against HSA for all sums the Moores owe the bank, including the 18% interest the Moores owe under their contract with the bank. In contrast, the Moores' own contract with HSA is silent regarding interest on attorneys' fees in any suit under that contract.

sion at TEX. FIN.CODE ANN. § 302.002 (Vernon Supp.2000)).

The Moores' sixth issue is overruled.

### Issues Presented by HSA

■ HSA asserts that the trial court erroneously refused cross-examination on the bank's attorneys' fees. During HSA's questioning of the bank's counsel, the court called counsel to the bench and, after an unrecorded conference, ordered the jury "to disregard all the questions and answers that [HSA's] counsel just asked."

The record indicates that the court interrupted HSA's counsel and struck HSA's cross-examination up to that point. After the court's instruction to the jury, counsel for HSA declared, "Note our exception. That's all we have." The testimony struck was harmless because it sought to establish that, if the Moores owed nothing to the bank, then no attorney's fees were due the bank. Because the Moores have been adjudged by the trial court and this Court as debtors, HSA was not harmed by the exclusion of that evidence.

HSA's first issue is overruled.[9]

■ In its second issue, HSA contends that the trial court refused to allow HSA to put on evidence of its own attorney's fees, giving the jury the impression the bank should win. HSA presented no legal theory to support a claim for attorney's fees. HSA did not have a contract with the bank, and did not sue the Moores for breach of contract. HSA offered no other legal theory to support its claim either in its pleadings, orally before the trial court, or in its brief on appeal. Absent a valid claim, there is no reason for the court to submit a question to the jury. *See Valero Eastex Pipeline Co. v. Jarvis*, 926 S.W.2d 789, 792 (Tex.App.—Tyler 1996, writ denied) ("Where there is no evidence war-

ranting submission to the jury, it is the court's duty to withdraw the case from their consideration and dispose of it as a matter of law.").

HSA's second issue is overruled.

■ In its third issue, HSA contends the trial court allowed harmful evidence from the bank's expert which was neither "reliable" nor "relevant" to the issue in the case—the fair market value of the property on the date of foreclosure. It argues that the court erred in denying HSA's *Robinson* challenge to Kirby. HSA moved to exclude Kirby's testimony based on his admission in deposition that he did not update his January 3, 1997 appraisal. Counsel for the Bank argued that Kirby was not asked at deposition why he did not do so, and proffered that Kirby would testify that no update to the appraisal was necessary. HSA did not argue that Kirby was unqualified or that his appraisal methodology was unreliable.

■ This Court will only overturn the trial court's decision to admit expert testimony when the decision was an abuse of the court's discretion. *Merckling*, 911 S.W.2d at 772. Given Kirby's oral court testimony that nothing changed in the fair market value between January 3, 1997 and April 1, 1997, the trial court did not abuse its discretion in allowing Kirby to testify.

HSA's third issue is overruled.

In its fourth issue, HSA contends the trial court allowed harmful evidence of a pending earnest money contract, which prejudiced the jury on the critical issue—the fair market value of the property.

HSA's fourth issue is the same as the Moores' third. For the same reasons discussed above, the admission of the earnest money contract was harmless error.

HSA's fourth issue is overruled.

---

9. In footnote 2 in its brief on appeal, HSA states that the court prevented HSA from cross-examining another bank witness, Scott Gauldin. It is unclear whether HSA intends to raise this as a point of error in this appeal. However, it was not error to exclude Gaul-

din's testimony, which HSA asserts was relevant to the question of whether the bank was a holder in due course, because the only fact issue at trial, other than the amount of attorney's fees, was the fair market value of the property.

In its fifth issue, HSA contends that the cumulative effect of trial court rulings on objections denied HSA the right to a fair and impartial trial. HSA argues that it did not get a fair trial because the judge was not impartial. The fact that the judge sustained more objections for one side than the other does not necessarily indicate partiality. *See Brook v. Brook,* 865 S.W.2d 166, 174 (Tex.App.—Corpus Christi 1993), *aff'd,* 881 S.W.2d 297 (Tex.1994). HSA's brief contains string cites to the record, but is very general in its allegation of unfairness. HSA does not assert with specificity that any particular evidentiary ruling constituted an abuse of discretion. It does allege that the effect of multiple cumulative adverse rulings resulted in an unfair trial; however, HSA does not explain how any particular improperly sustained objection or intervention on behalf of the bank affected the outcome of the case. HSA must show that the alleged errors, based on the record as a whole, probably caused the rendition of an improper verdict. Tex.R.App. P. 44.1(a)(1).

HSA's fifth issue is overruled.

In its sixth and seventh issues, HSA asserts that the trial court erred in its calculations of the judgment and in its award of appellate attorney's fees. These issues are addressed above in response to the Moores' issues 4 and 5.

In addition to the points raised by the Moores, HSA asserts that there is no evidence to support the award of appellate attorney's fees to the bank.[10] Counsel for the bank testified that he was a board certified appellate lawyer. He testified as to his rate. He described the work that would be necessary upon an appeal to this court and any appeal to the supreme court. He testified as to the reasonable amount of fees that would be incurred at each stage of an appeal. There is sufficient evidence to support the amount of appellate attorney's fees awarded in the judgment.

HSA contends that, if cross-examination of the bank's counsel had been allowed to proceed, HSA's counsel would have shown that the bank's appellate attorney's fees were not reasonable and necessary. As discussed above, HSA stated "That's all we have" when its evidence was struck. It did not make a bill of exception, and there is no evidence of what questions would have been asked of the bank's counsel on cross-examination.

HSA's issues 6 and 7 are overruled.

The judgment of the trial court is reformed in part to award interest on attorney's fees for this appeal from the date of filing the notice of appeal, June 26, 1998, from the date of filing a petition for review by the supreme court for fees triggered by that event, and from the date of an order granting review by the supreme court for fees triggered by that event. The judgment of the trial court is affirmed in all other respects.

---

10. HSA further argues that the judgment impermissibly awards pre-judgment interest on attorney's fees. HSA is correct in its assessment of the law, but the judgment does not award pre-judgment interest on attorney's fees.