**Affirmed in Part and Reversed and Remanded in Part and Memorandum Opinion filed August 16, 2012.**



**In The**

# 𝕱𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

_____

**NO. 14-09-00227-CV**
_____

**VERNON HEWITT, Appellant**

**V.**

**RYAN MARINE SERVICES, INC. AND THE RMS ORION, Appellees**

**On Appeal from the County Court at Law Number 2**
**Galveston County, Texas**
**Trial Court Cause No. 57,222**

## MEMORANDUM OPINION

Appellant, Vernon Hewitt, appeals from the final judgment entered by the trial court following a jury trial.   We affirm in part and reverse and remand in part.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellant worked as a deckhand on the RMS Orion, a crew boat operated by appellee, Ryan Marine Services, Inc. ("Ryan Marine").   Ryan Marine used the Orion to transport people and supplies between offshore platforms and land in the Gulf of Mexico.

At 2:30 a.m. on April 27, 2007, a rainy night, the Orion pulled into the Martin Mainstream dock in Galveston. While Glen Becker, captain of the Orion, "pushed" the Orion into the dock using the stern controls, the two deckhands on duty, appellant and Eugene Caesar, worked to tie the boat to the dock. Caesar initially moved from the deck of the Orion onto the dock where he was to tie the boat to a bollard. Appellant remained on the deck of the Orion and as he pulled to take the slack out of the rope used to tie the boat to the dock, he slipped and fell into a metal "bit," injuring his shoulder and neck. Both Caesar and Captain Becker witnessed appellant's fall.

Appellant eventually required surgery on several levels of his cervical spine to address the injuries caused by his impact with the metal "bit." Appellant's surgeon testified that, even after his surgery, appellant's ability to perform manual labor would be significantly limited in the future.

Appellant eventually filed suit against appellees alleging three causes of action: negligence under the Jones Act,[1] a claim that the Orion was unseaworthy, and a claim for maintenance and cure. *See Weeks Marine, Inc. v. Garza*, No. 10-0435, 2012 WL 2361721, at *4 (Tex. June 22, 2012) (pointing out that an injured seaman has three claims against his employer: Jones Act negligence, a claim the ship was unseaworthy, and a claim for maintenance and cure). Appellant's suit eventually proceeded to a jury trial.

The issue of non-skid paint and its use on the Orion and other, similar, vessels was discussed during opening statements. Appellant discussed Ryan Marine's duty as appellant's employer as well as the lack of non-skid paint on the portion of the deck where appellant was injured:

> Now, I'm going to tell you why we're suing Ryan Marine. We're suing them basically for two reasons. The first reason is they broke The Rule.

---

[1] 46 U.S.C.A. § 30104 (West 2008).

They had a dangerous condition on their boat, they knew about it, they didn't fix it and because of it Mr. Hewitt got hurt, very simple. A third of the deck is covered in nonskid paint, they should have put the other two-thirds of the deck nonskid paint. [Appellant] wouldn't have been in a position to slip.

In response, Ryan Marine also discussed the use of non-skid paint on wooden decks.

Now, the next issue is going to be the … decking. They're going to put Commander Green … from the Coast Guard up there and he – I guess he's going to testify that the … standard is you have to have nonskid paint.

Now, I don't think he's going to be able to tell you where that standard comes from, because I don't think that's the standard. I don't think that's a standard at all. I think that if you've got metal decks – and this will be the testimony – if you have metal decks, then you need to be worried about nonskid and that sort of issue, but these aren't metal decks, there's no dispute about that, … these are wooden decks.

And these are not plywood wooden decks, these are not glazed or glossed over wooden decks, these are exposed wood decks, sort of like what you have – in fact, I think probably even rougher wood than you would have on a deck at your home. This man is wearing the appropriate shoes, we don't dispute that, but this stuff is not – this wood is not slippery.

During trial, it was undisputed that, at the time of appellant's injury, he was wearing the required personal protective equipment, was performing the task of "tying off" the Orion as he had been instructed to do by Captain Becker, and was not engaged in any improper conduct such as horseplay. It was also undisputed that the Orion had a wooden deck consisting of unfinished planking and the area where appellant was injured was not coated with non-skid paint. In addition, it was also undisputed that other sections of the Orion's deck had been coated with non-skid paint. It was undisputed that the deck was wet when appellant was injured. Finally, it was undisputed that Ryan Marine had a duty to correct known safety issues as soon as possible after learning about them.

Appellant called Don Green to testify as an expert. Commander Green had served 23 years in the Coast Guard, retiring with the rank of commander. During much of his

career with the Coast Guard, Commander Green worked as a marine inspector. After retiring from the Coast Guard, Commander Green purchased a marine navigation training school. Commander Green proposed to testify that Ryan Marine was negligent and the Orion was unseaworthy because the portion of the deck where appellant was injured was not coated with non-skid paint despite Ryan Marine's knowledge that the Orion's deck was always slippery when it was wet.[2] As part of his opinion testimony that Ryan Marine was negligent and the Orion was unseaworthy, appellant planned to have Commander Green testify that (1) many of Ryan Marine's other vessels with wooden decks were coated with non-skid paint, and (2) Ryan Marine applied non-skid paint to all of the Orion's deck after appellant's injury. Ryan Marine then lodged a Rule 403 objection, which the trial court sustained after a lengthy conference at the bench. As a result, appellant was prohibited from asking Commander Green about the use of non-skid paint on the wooden decks of other Ryan Marine vessels.

During cross-examination, Ryan Marine asked Commander Green about the Coast Guard's training vessel, the U.S.C.G.C. Eagle. Specifically, Ryan Marine asked Commander Green if the Coast Guard used non-skid paint on the Eagle's deck. Commander Green answered it did not, but instead the cadets used a process called holystoning. When Ryan Marine passed Commander Green, appellant approached the bench and argued he should be allowed to question Commander Green about Ryan Marine's use of non-skid paint on its other vessels because Ryan Marine's cross-examination about the use of non-skid paint on the Eagle had "opened the door." Appellant also argued that Ryan Marine's questions conveyed a false impression to the jury through the testimony about the lack of non-skid paint on the Eagle, a vessel with wooden decks like the Orion. On re-direct examination, Commander Green explained that holystoning is a process where the cadets use a type of pumice to clean and add

---

[2] Commander Green's opinion was based, in part, on Captain Becker's deposition testimony that the Orion's deck was frequently wet and when the deck was wet, it was slippery.

4

roughness to the Eagle's decks. When appellant broached the subject of other Ryan Marine vessels, Ryan Marine objected and the trial court once again prevented appellant from going into Ryan Marine's use of non-skid paint on its other vessels. Commander Green ultimately opined that Ryan Marine was negligent and the Orion unseaworthy because Ryan Marine knew the deck was always slippery when it was wet but failed to correct the safety hazard even though non-skid paint provided a quick and easy fix.

Following Commander Green's testimony, appellant called Captain Becker as an adverse witness. Captain Becker confirmed that the deck of the Orion was always slippery when it was wet and that the night appellant was injured, the deck was wet. The following exchange then occurred:

> Q.    I mean, if you got a slippery deck and you don't put down the … nonskid paint or do something to fix the slipperiness or make sure people are really aware of it, if you just leave it there for a long period of time, it's just going to be a matter of time before someone slips and falls, true?
>
> [Captain Becker]:    You don't put it on wooden decks.
>
> Q.    Okay.  You don't put nonskid paint on wooden decks?
>
> [Captain Becker]:    The company — I wouldn't have, no, sir.
>
> Q.    You wouldn't have?
>
> [Captain Becker]:    No, sir.

Captain Becker then went on to testify that, despite the fact that about one-third of the Orion's deck had been coated in non-skid paint by a third party,[3] he did not believe the deck of the Orion was unsafe. Later during his testimony, the following exchange took place:

---

[3] Captain Becker testified the non-skid paint had been supplied by a third party, the company the Orion was delivering cargo to, and was applied while he was asleep and without his permission.

Q.   … One of the responsibilities in the Ryan Marine handbook is [to] prevent accidents, but also reduce the risk of accidents, right?

[Captain Becker]:   Right.

Q.   One way to reduce the risk of accidents is when you got a slippery deck to see if you can paint it with that sand and the nonskid paint, true?

[Captain Becker]:   But that could cause another accident.

Following Captain Becker's answer, the trial judge called for a break. During the break, appellant again asserted he should be allowed to cross-exam Captain Becker regarding the use of non-skid paint on other Ryan Marine vessels as well as the fact the Orion received a complete coat of non-skid paint after appellant's injury as impeachment and to correct the impression created by Captain Becker's testimony that the use of non-skid paint was against Ryan Marine's policies, non-skid paint was not used by Ryan Marine, and was even dangerous. The trial judge denied that request.

Later, appellant sought to introduce testimony from Apolonio Sanchez, a Ryan Marine employee and crewmember of the Orion at the time of appellant's injury. Sanchez was going to testify that he had worked on shrimp boats with wooden decks and the decks were coated with non-skid paint. The trial court excluded that testimony as well.

At the close of the evidence, the jury found that Ryan Marine was not negligent, that the Orion was not unseaworthy and thus did not reach the damages questions associated with those causes of action. The jury did find that appellant was injured while working on the Orion and awarded him $169,000 in past and future cure that Ryan Marine had refused to pay. The trial court entered judgment on the jury's verdict, rendering a take-nothing

judgment on appellant's negligence and seaworthiness claims, and awarding him $170,475.17 in past and future cure and prejudgment interest.[4]

Appellant filed a motion for new trial on the grounds that the trial court improperly excluded evidence that the wooden decks of other Ryan Marine vessels and the decks of vessels not owned by Ryan Marine were coated with non-skid paint, as well as the fact that the deck of the Orion was fully coated with non-skid paint nine months after appellant's injury. The trial court denied the motion for new trial and this appeal followed.

## DISCUSSION

On appeal, appellant raises three issues, each related to the trial court's decision to exclude evidence discussing the use of non-skid paint on the wooden decks of seagoing vessels. In his first issue, appellant contends the trial court abused its discretion by excluding evidence that the wooden decks of other Ryan Marine vessels were coated with non-skid paint. Appellant's second issue asserts the trial court abused its discretion by prohibiting appellant from impeaching Captain Becker with evidence that (1) the wooden deck of the Orion was coated with non-skid paint after appellant was injured; and (2) that other Ryan Marine vessels used non-skid paint on their wooden decks at the time appellant was injured. Because they address related topics, we address appellant's first two issues together. Finally, in his third issue, appellant argues the trial court abused its discretion by prohibiting appellant from introducing evidence that other companies involved in maritime industries use non-skid paint on the wooden decks of their vessels.

## I.    Standard of Review

We review the admission or exclusion of evidence under an abuse of discretion standard. *In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005). A trial court abuses its

---

[4] Ryan Marine has not challenged the judgment in favor of appellant on appeal.

discretion if it acts without reference to any guiding rules and principles or if the ruling is arbitrary and unreasonable. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). A party seeking to reverse a judgment based on evidentiary error must prove that the error probably, but not necessarily, caused rendition of an improper judgment. *Reliance Steel & Aluminum Co. v. Sevcik*, 267 S.W.3d 867, 871 (Tex. 2008). The Supreme Court has recognized that it is impossible to prescribe a specific test for harmless-error review as the standard is more a matter of judgment than precise measurement. *Id.* A reviewing court must evaluate the whole case from voir dire to closing argument. *Id.* In that evaluation, the reviewing court must consider the state of the evidence, the strength and weakness of the case, and the verdict. *Id.* If erroneously excluded evidence was crucial to a key issue, the error was likely harmful. *Id.* at 873.

## II. The Trial Court's Exclusion of Evidence Related to the Use of Non-Skid Paint on Ryan Marine Vessels

In his first issue, appellant contends the trial court abused its discretion when it prevented him from questioning Commander Green about the use of non-skid paint on the wooden decks of other Ryan Marine vessels after Ryan Marine had questioned Commander Green about the non-use of non-skid paint on the Eagle, the Coast Guard's training ship. According to appellant, Ryan Marine's questions about the Eagle's decks opened the door to the admission of evidence regarding Ryan Marine's use of non-skid paint on the wooden decks of its other vessels. We agree.

Here, when appellant sought to introduce through Commander Green evidence that Ryan Marine used non-skid paint on other vessels in its fleet, Ryan Marine lodged a Rule 403 objection arguing the prejudicial effect outweighed the probative value of the evidence.[5] Then, during cross-examination, Ryan Marine proceeded to ask about the fact

---

[5] The actual objection was "I think it's highly prejudicial as to probative value. It goes to probative value."

the Coast Guard did not use non-skid paint on the wooden decks of the Eagle. By asking Commander Green about the use or non-use of non-skid paint on a vessel not involved in the incident underlying the lawsuit, Ryan Marine opened the door for appellant to then examine Commander Green about Ryan Marine's use of non-skid paint on other vessels in its fleet. By preventing appellant from doing so, we hold the trial court abused its discretion. *See Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007) (discussing that a party opens the door to the admission of evidence of collateral matters when it injects those collateral issues into the lawsuit); s*ee also Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 906 (Tex. 2000) (holding that evidence was admissible when the defendant opened the door through witnesses' testimony that conveyed a false impression); *Sw. Elec. Power Co. v. Burlington N. R.R.*, 966 S.W.2d 467, 473 (Tex. 1998) (noting that a party opens the door to the admission of otherwise objectionable evidence offered by the other side when it offers evidence of a similar character); *Moore v. Bank Midwest, N.A.*, 39 S.W.3d 395, 402 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) (explaining that a party opens the door to the admission of otherwise objectionable evidence offered by the other side when it introduces the same or similar evidence).

During his testimony, Captain Becker testified that he, the captain of a Ryan Marine vessel, would not use non-skid paint on the wooden decks of a vessel like the Orion. He also testified that the non-skid paint that was applied to portions of the Orion's wooden deck was done without his knowledge by a third party. Finally, Captain Becker testified that the use of non-skid paint on wooden decks can create a dangerous condition for seamen. In his second issue, appellant contends the trial court abused its discretion when it then prevented him from impeaching that testimony because it created a false impression that Ryan Marine did not use non-skid paint as it was not necessary on wooden decks and was even dangerous for seamen. Specifically, appellant contends he should have been allowed to question Captain Becker about the use of non-skid paint on other Ryan Marine

9

vessels as well as the subsequent painting of the Orion's deck with non-skid paint. We turn first to the issue of the use of non-skid paint on Ryan Marine vessels other than the Orion.

We conclude the trial court abused its discretion when it prevented appellant from questioning Captain Becker about the use of non-skid paint on Ryan Marine's vessels other than the Orion for the same reasons detailed above. *See Bay Area Healthcare Grp., Ltd.*, 239 S.W.3d at 234; s*ee also Horizon/CMS Healthcare Corp.*, 34 S.W.3d at 906; *Sw. Elec. Power Co.*, 966 S.W.2d at 473; *Moore*, 39 S.W.3d at 402.

We turn next to appellant's contention that he should have been allowed to impeach Captain Becker's testimony regarding his opinion on the safety and use of non-skid paint on wooden decks by questioning him about Ryan Marine's decision, nine months after appellant's injury, to coat the Orion's entire deck with non-skid paint, a subsequent remedial measure. Texas law limits the admissibility of evidence of subsequent remedial measures so that the jury does not consider them as proof of negligence. *Brookshire Bros., Inc. v. Lewis*, 911 S.W.2d 791, 797 (Tex. App.—Tyler 1995, writ denied). However, while evidence of subsequent remedial measures taken after an accident is ordinarily inadmissible, it need not be excluded if it is offered for another legitimate purpose. *Tex. Dept. of Transp. v. Pate*, 170 S.W.3d 840, 849 (Tex. App.—Texarkana 2005, pet. denied). One of those legitimate purposes is impeachment. Tex. R. Evid. 407(a).

Here, appellant contends the trial court erred when it refused to allow him to question Captain Becker about the subsequent painting of the Orion's deck, a vessel he still commanded, after his testimony regarding his opinion on the use of non-skid paint left the jury with the false impression that non-skid paint should not be used on wooden decks as it creates new dangers for seamen. We conclude the trial court abused its discretion when it prohibited appellant from impeaching Captain Becker by questioning him about the

10

subsequent painting of the Orion's entire wooden deck with non-skid paint. *See Denney v. Dillard Texas Operating Ltd. P'ship*, No. 08-01-00442-CV, 2003 WL 21035409 *5–6 (Tex. App.—El Paso May 8, 2003, pet. dismissed) (mem. op.) (holding the trial court erred when it excluded impeaching evidence because by doing so, it left the jury with a false impression).

We turn next to the harm analysis. Here, appellant sought to demonstrate that the Orion was unseaworthy and Ryan Marine was negligent under the Jones Act because Ryan Marine knew the deck of the Orion was always slippery when it was wet but chose not to use a readily available method to decrease that condition: non-skid paint. Appellant sought to introduce evidence to that effect through Commander Green's testimony that Ryan Marine used non-skid paint on other vessels but was prevented from doing so by the rulings of the trial court. This remained the case even after (1) Ryan Marine questioned Green about the fact the Coast Guard did not use non-skid paint on its training ship, the Eagle; and (2) Captain Becker testified regarding his opinion that non-skid paint should not be used on wooden decks because it is potentially dangerous and the use of non-skid paint on a portion of the Orion's deck was done against his wishes by a third party.

As a result of the trial court's evidentiary rulings, appellant was unable to effectively counter the false impression that non-skid paint should not be used on wooden decks because the only evidence available to do so was excluded. In addition, Ryan Marine, during closing argument, emphasized Commander Green's testimony regarding the absence of non-skid paint on the Eagle as well as Captain Becker's opinions regarding the use of non-skid paint on wooden decks. We hold the exclusion of this evidence was harmful. *See Caffe Ribs, Inc. v. State*, 328 S.W.3d 919, 932–33 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (holding that the trial court's erroneous exclusion of evidence that created a false impression or unfairly skewed the trial in favor of one party was harmful error). We sustain appellant's first and second issues.

11

**III.    The Trial Court's Exclusion of Evidence Regarding the Use of Non-Skid Paint on Fishing Vessels**

In his third issue, appellant contends the trail court abused its discretion when it prohibited him from asking Apolonio Sanchez, a crew mate of appellant's on the Orion, about his work on shrimp boats with wooden decks coated with non-skid paint.   Sanchez's excluded testimony consisted of the following:

Q.    Were you a shrimper for Cimco the whole time or were you off on your own?

A.    No.   I worked for two companies.

Q.    Who else?

A.    Hernandez Brothers before Cimco, and that's it.

Q.    Where is Cimco based out of, do you know?

A.    They have a base in Palacios, and they have — Brownsville, and they have Port Isabelle.

Q.    Do you know how many boats they have about?

A.    20-something.

Q.    A lot?

A.    Yes.

Q.    The shrimp boats are a lot smaller than the boats you are working on for Ryan though, right?

A.    No, we're close.

Q.    Did those — did those boats have non-skid tape on them?

A.    No.   They just had — yeah, they had the same thing.

Q.    They had non-skid paint on them?

A.    Yeah.

12

According to appellant, he should have been allowed to introduce this testimony because it was evidence that the use of non-skid paint was standard in the industry.

When reviewing matters committed to the trial court's discretion, an appellate court may not substitute its own judgment for the judgment of the trial court. *Caffe Ribs, Inc.*, 328 S.W.3d at 927. An appellate court must uphold a trial court's evidentiary rulings if there is any legitimate basis for the ruling. *Id.* Here, the trial court could have concluded that appellant, through Sanchez's proffered testimony, failed to establish that shrimp boats and crew boats such as the Orion are governed by the same safety standards and therefore determined the evidence was not relevant. We hold the decision to exclude Sanchez's testimony was not an abuse of discretion. *See Stinson v. Arkla Energy Res.*, 823 S.W.2d 770, 772 (Tex. App.—Texarkana 1992, no writ) (holding trial court properly excluded reports of pipeline failures under dissimilar circumstances). We overrule appellant's third issue.

## CONCLUSION

Having sustained appellant's first two issues, we must decide whether to reverse and remand the entire case or, as allowed by Rule 44.1(b) of the Texas Rules of Appellate Procedure[6] and as requested by appellant, affirm the maintenance and cure portion of the judgment and remand only the unseaworthiness and Jones Act causes of action. Because it is a separate and distinct cause of action from appellant's other causes of action, we affirm the maintenance and cure judgment in favor of appellant. *See Brister v. A.W.I., Inc.*, 946 F.2d 350, 361 (5th Cir. 1991) ("A maintenance and cure claim typically accompanies other claims such as the Jones Act and unseaworthiness claims in this case, which allow for a more liberal recovery…. As a result, an award for maintenance and cure

---

[6] Rule 44.1(b) provides, in pertinent part: "If the error affects part of, but not all, the matter in controversy and that part is separable without unfairness to the parties, the judgment must be reversed and a new trial ordered only as to the part affected by the error." Tex. R. App. P. 44.1(b)

is independent of these other sources of recovery."); *see also Weeks Marine, Inc.*, 2012 WL 2361721, at *4 (pointing out that an injured seaman has three claims against his employer: Jones Act negligence, a claim the ship was unseaworthy, and a claim for maintenance and cure). We reverse the unseaworthiness and Jones Act portions of the trial court's judgment and remand those matters to the trial court for a new trial.

/s/    Margaret Garner Mirabal
Senior Justice

Panel consists of Justices Seymore, Boyce, and Mirabal.[7]

---

[7] Senior Justice Margaret Garner Mirabal sitting by assignment.

14