Opinion issued July 20, 2006                    
     











In The
Court of Appeals
For The
First District of Texas




NO. 01-04-01214-CV




SHARON KAY KEITH, Appellant

V.

RANDALL DEAN KEITH, Appellee




On Appeal from the 312th District CourtHarris County, Texas
Trial Court Cause No. 2000-24422

 
 
O P I N I O N
             Appellant, Sharon Kay Keith (“Sharon”), appeals a sanctions order under
Texas Rule of Civil Procedure 13 awarding appellee, Randall Dean Keith
(“Randall”), $36,913.51 in attorney’s fees and awarding Linda Thompson, attorney
ad litem for the couple’s minor children, $7,400.00 in attorney’s fees. See Tex. R.
Civ. P. 13. We determine (1) whether the trial court erred by not giving Sharon the
requisite 45-day notice of the first trial setting, (2) whether the trial court erred in
failing to specify in its order the particulars of good cause, (3) whether the trial court
erred in finding that Sharon’s emergency petition to modify the parent-child
relationship (“emergency petition”) was groundless and filed in bad faith, (4) whether
the trial court erred in providing that the attorney’s fees were collectible as child
support, (5) whether there was legally sufficient evidence to support the award of
appellate attorney’s fees, (6) whether the trial court erred in improperly conditioning
the award of appellate attorney’s fees, (7) whether the trial court erred in finding that
there was legally and factually sufficient evidence to support the ad litem’s attorney’s
fees, and (8) whether the trial court erred in awarding 10% post-judgment interest on
the fees awarded in the sanctions judgment. We modify the judgment and affirm the
judgment as modified.
Facts
          The final divorce decree had been rendered on December 17, 2002. On June
16, 2003, Sharon’s attorney sent a letter to Randall’s attorney, requesting to schedule
a mediation of some issues concerning modification of the divorce decree. In
response, Randall telephoned Sharon’s attorney regarding his request for mediation
and sent a letter in response to the request for mediation. On July 11, 2003, Sharon
filed the emergency petition and requested that the court make temporary orders for
the safety and welfare of the children. Sharon obtained a temporary restraining order
(“TRO”), which, in part, enjoined Randall from leaving the United States with their
three children. Randall had been scheduled to leave on a Caribbean cruise with his
children on July 14, 2003, a trip that had been planned since May 2003. In Sharon’s
affidavit, she alleged that Randall had spanked, isolated, and failed to take their
autistic child to therapy; denied the children food; yelled at them frequently; returned
the children with horrible sunburns and unexplained bruises; and failed to take the
children to scheduled doctor’s appointments. On July 14, 2003, the trial court
dissolved the portion of the TRO that prohibited Randall from taking the children on
the cruise.
          On July 30, 2003, Randall filed a motion for sanctions, pursuant to rule 13 of
the Texas Rules of Civil Procedure, alleging that Sharon’s emergency petition was
groundless and brought in bad faith and solely for the purposes of harassment. He
further alleged that Sharon’s emergency petition was a direct attempt to sabotage and
to thwart his family’s vacation plans. On August 6, 2003, Randall filed a counter-petition seeking both modification of the divorce decree and attorney’s fees and
expenses through trial and appeal. On September 16, 2003, Sharon filed a notice of
non-suit of her emergency petition’s claim.
          The trial court held two sanctions hearings on October 16, 2003 and October
22, 2003. During the hearings, the trial court considered Randall’s motion for
sanctions and the affirmative claim for attorney’s fees asserted in Randall’s counter-petition. On July 12, 2004, the trial court entered an “Order Granting Respondent’s
Counterclaims, Opposed Motion For Sanctions Pursuant to Rule 13 and Judgment For
Attorney’s Fees.” In the July 12 order, the court granted Randall’s motion for
sanctions, finding that Sharon’s emergency petition had been groundless and brought
in bad faith. The court awarded attorney’s fees to Randall and Thompson, making the
fees collectible as child support. The court provided in the order that “[i]t is ordered
that said [$36,913.51] money judgment shall be reduced to Twenty-Six Thousand
Nine Hundred Thirteen Dollars and 51/100 ($26,913.51) if this case is not appealed
by either party to the Supreme Court resulting in a ruling adverse to Sharon Kay
Keith” and “it is further ordered that said money judgment shall be reduced to
Nineteen Thousand Four Hundred Thirteen Dollars and 51/100 ($19,413.51) if this
case is not appealed by either party to the Court of Appeals resulting in a ruling
adverse to Sharon Kay Keith.” On August 20, 2004, the court entered findings of fact
and conclusions of law regarding the sanctions.

Final Judgment
          Although neither party contends that the summary judgment is not a final,
appealable order, we review sua sponte jurisdictional issues. M.O. Dental Lab v.
Rape, 139 S.W.3d 671, 673 (Tex. 2004) (citing N.Y. Underwriters Ins. Co. v.
Sanchez, 799 S.W.2d 677, 678 (Tex. 1990) (per curiam)).
          It is well-established that, in general, an appeal may be taken only from a final
judgment; that is, an appeal may be taken only from a judgment that disposes of all
pending parties and claims.


 Lehmann v. Har-Con Corp., 39 S.W.3d 191, 195 (Tex.
2001). Absent a conventional trial on the merits, a judgment is final “if and only if
either it actually disposes of all claims and parties then before the court, regardless
of its language, or it states with unmistakable clarity that it is a final judgment as to
all claims and all parties.” Id. at 192–93. The law does not require that a final
judgment be in any particular form. Id. at 195. The language of an order or judgment
can make it final, even though it should have been interlocutory, if that language
expressly disposes of all claims and all parties. Id. at 200. If the intent to finally
dispose of the case is clear, “then the order is final and appealable, even though the
record does not provide an adequate basis for rendition of judgment.” Id. Therefore,
whether an order is a final judgment must be determined from its language and the
record in the case. Id. at 195.
           The parties have treated the July 12 order as a final judgment. See Cont’l
Airlines, Inc. v. Kiefer, 920 S.W.2d 274, 277 (Tex. 1996) (finding that finality “must
be resolved by a determination of the intention of the court as gathered from the
language of the decree and record as a whole, aided on occasion by the conduct of the
parties.”); see Lehmann, 39 S.W.3d at 203. On appeal, neither of the parties contests 
that the July 12 order was the trial court’s final judgment.


 The title of the order
appealed, “Order Granting Respondent’s Counterclaims, Opposed Motion For
Sanctions Pursuant to Rule 13 and Judgment For Attorney’s Fees,” although not
dispositive, is indicative that the order was intended to be final. See Cont’l Airlines,
Inc., 920 S.W.2d at 277. Further, in this case, the judgment’s “Mother Hubbard”
language


 and the conduct of the parties indicate the trial court’s intent to make the
judgment final. See Lehmann, 39 S.W.3d at 195. The substance of the order
recognizes Sharon’s non-suit and specifically states that the order is to resolve all
counterclaims, providing that “[t]he Court finds that SHARON KAY KEITH’s
request for affirmative relief was non-suited. This Order resolves all facts and claims
between all parties regarding this case, including all other Counterclaims filed
therein. All relief not granted herein is denied.” (Emphasis added.) Additionally,
the trial court assessed post-judgment interest, which is typically assessed in a final
judgment. See Tex. Fin. Code Ann. § 304.001 (Vernon 2005). Finally, because
Sharon non-suited her emergency petition and because Randall represents on appeal
that he never sought a hearing on any remaining issues of his counter-petition,


 we
are left with the firm implication that the court intended that the July 12, 2004 order,
signed almost nine months after the October 22 hearing, be its final decree.
Counter-Petition
          Sharon argues in point of error one that the trial court erred in rendering
judgment on Randall’s counter-petition for attorney’s fees because the court did not
provide adequate notice, pursuant to Texas Rule of Civil Procedure 245, that the court
would consider Randall’s counter-claim for fees at the sanctions hearing. See Tex.
R. Civ. P. 245. Although Sharon admits in her brief that the only issue before the
court on October 16 and October 22 was Randall’s motion for sanctions, she argues
that the trial court “converted” the judgment for sanctions into a judgment for
attorney’s fees on Randall’s counter-claim because the trial court found in conclusion
of law 16 that “Randall Dean Keith’s Counter-Petition in Suit Affecting the Parent-Child Relationship requested attorney’s fees and expenses, which
Respondent/Counter Petitioner elected to pursue under his Motion for Sanctions.”
           A court must provide “reasonable notice of not less than 45 days to the parties
of a first setting for trial. . . .” Tex. R. Civ. P. 245. However, when a party fails to
object timely and specifically to the first trial setting on the basis of insufficiency of
notice under rule 245, he preserves nothing for review. State Farm Fire & Cas. Co.
v. Price, 845 S.W.2d 427, 432 (Tex. App.—Amarillo 1992, writ dism’d by agr.); see
Tex. R. App. P. 33.1. On appeal, Sharon has not demonstrated that she preserved this
complaint.
          Further, under the doctrine of invited error, an appellant may not complain on
appeal that a court granted the appellant’s own request. Tittizer v. Union Gas Corp.,
171 S.W.3d 857, 862 (Tex. 2005); Texaco, Inc. v. Pennzoil Co., 729 S.W.2d 768, 835
(Tex. App.—Houston [1st Dist.] 1987, writ ref’d n.r.e.). Simply put, a party may not
lead a trial court into error and then complain about it on appeal. Id. At the October
22 hearing, Sharon’s attorney urged the court to consider the hearing as the final one
in the case. The following excerpt from the record demonstrates that the parties
agreed to consider both the attorney’s fees on the motion for sanctions and the
affirmative claim for attorney’s fees in Randall’s counter-petition at that hearing:
[RANDALL’S ATTORNEY]: The underlying lawsuit is
still pending, Mr. Keith’s counter-petition to modify.
 
[SHARON’S ATTORNEY]: This is the hearing for the
motion to modify.
 
COURT: That’s what I thought.
 
[RANDALL’S ATTORNEY]: This is the hearing on the
motion for sanctions. The counter-petition—his counter-petition is still pending.
 
[SHARON’S ATTORNEY]: When he asked for attorney’s
fees that’s what I thought we were here deciding.
 
COURT: Well, technically he may be correct in that he’s
got a cross-petition to modify. . . .
 
[SHARON’S ATTORNEY]: Judge, if I can respond? Mr.
Stocker—[sic] and a couple of weeks ago I believe
correctly stated that the only thing in the counter-petition
is his request for fees, so this is the final hearing on the
case. We nonsuited our case, he had his counter-petition
ready, it wasn’t a temporary hearing, it’s—it is the final
hearing.
 
COURT: Well— 
 
[SHARON’S ATTORNEY]: —it addresses all the issues. 

                    . . . 
 
[SHARON’S ATTORNEY]: I would request the Court to
make a finding that we heard the attorney’s fees issue that
was requested in [Randall’s] petition.
 
THE COURT: Well, yeah, that’s why we’re here.
 
[SHARON’S ATTORNEY]: Thank you, Judge.
          Sharon not only referred to the hearing as the final hearing several times, but
she also made a request for the court to find that the attorney’s fees claim in the
counter-petition was heard at the sanctions hearing. Because Sharon requested that
the sanctions hearing be the final hearing on the award of attorney’s fees requested
in Randall’s counter-petition, she may not now complain that the hearings were not
set for trial in accordance with Rule 245—even assuming that the court erred in so
doing.
          We overrule point of error one.
Particularity Requirement and Merits
          In points of error two and three, Sharon argues that the trial court erred “in
finding Appellant’s Emergency Petition was groundless and filed in bad faith” and
“in failing to specify in its Findings of Facts and Conclusions of Law the particulars
for good cause to support its Sanctions Order.”       
A.      Particularity
          In evaluating an allegation of a rule 13 violation, “[c]ourts shall presume that
pleadings, motions, and other papers are filed in good faith.” Tex. R. Civ. P. 13. Rule
13 requires the trial court to hold an evidentiary hearing to make the necessary factual
determinations about the motives and credibility of the person signing the allegedly
groundless petition. Bisby v. Dow Chem. Co., 931 S.W.2d 18, 21 (Tex.
App.—Houston [1st Dist.] 1996, no writ). Rule 13 provides for sanctions if a party
files a pleading that is either (1) groundless and brought in bad faith or (2) groundless
and brought to harass. Tex. R. Civ. P. 13. Groundless means no basis in law or fact
and not warranted by a good-faith argument for the extension, modification, or
reversal of existing law. Id. If a pleading is filed in violation of rule 13, “the court,
upon motion or upon its own initiative, after notice and hearing, shall impose an
appropriate sanction available under Rule [of Civil Procedure] 215.2(b), upon the
person who signed it, a represented party, or both.” Id. No sanctions may be imposed
under rule 13 “except for good cause, the particulars of which must be stated in the
sanctions order.” Id.
          Rule 13 is clear: the particulars for good cause “must be stated in the sanctions
order.” Tex. R. Civ. P. 13. When a rule of procedure is clear, unambiguous, and
specific, we construe the rule’s language according to its literal meaning. Murphy v.
Friendswood Dev. Co., 965 S.W.2d 708, 709 (Tex. App.—Houston [1st Dist.] 1998,
no pet.). One purpose of the rule 13 particularity requirement is to justify the
imposition of the sanctions and to give some evidence that the sanctions were
carefully weighed and imposed in an appropriate manner when justified by the
circumstances. TransAmerican Natural Gas Corp. v. Powell, 811 S.W.2d 913, 917
(Tex. 1991); Braden v. Downey, 811 S.W.2d 922, 929 (Tex. 1991). 
          “A trial court’s failure to specify the good cause for sanctions in a sanction
order may be an abuse of discretion.” Gaspard v. Beadle, 36 S.W.3d 229, 239 (Tex.
App.—Houston [1st Dist.] 2001, pet. denied); Bradt v. Sebek, 14 S.W.3d 756, 769–70
(Tex. App.—Houston [1st Dist] 2000, pet. denied). A failure to make particular
findings in the order may be harmless error, however, if the trial court’s findings of
fact and conclusions of law “supply the particulars of the good cause required by Rule
13.” Gaspard, 36 S.W.3d at 239 (holding that trial court’s failure to make particular
findings in sanctions order was harmless error because trial court stated on record in
its findings that “[The trial court] find[s] good cause to issue sanctions . . . under
Rule 13 for the conduct that happened after [the filing of the initial lawsuit] and the
counterclaim and discovery and the whole proceedings of this case up to then. [The
trial court also finds] that your conduct was not up to the standards of how lawyers
should conduct themselves in a lawsuit. . . .”); see Gorman v. Gorman, 966 S.W.2d
858, 867–68 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (holding that trial
court’s failure to make particular findings in sanctions order was harmless because
trial court’s findings of fact stated that “[husband’s] only purpose in filing suit was
to keep [wife] from receiving the benefit of previous agreements, and that [husband]
acted in concert with the plaintiff in the underlying suit, thereby unnecessarily
extending the litigation.”).
          The order here did not recite the particular reasons supporting good cause to
issue the sanction. The order simply stated: “This Court finds that the Emergency
Petition to Modify Parent-Child Relationship . . . was groundless and brought in bad
faith, as is defined and contemplated by Rule 13 of the Texas Rules of Civil
Procedure.” Consequently, by neglecting adequately to recite the particular reasons
supporting good cause to issue the sanctions, the order did not meet the particularity
requirement of rule 13. See Tex. R. Civ. P. 13. However, the trial court entered
findings of fact and conclusions of law reciting the bases for finding good cause:
1.Sharon Kay Keith’s Emergency Petition to Modify
Parent–Child Relationship was groundless and
brought in bad faith.
 
1.(a)The Court Finds that the allegations made by Sharon
Kay Keith in her affidavit attached to the emergency
motion were so disparate from the testimony
received in open court, including that from the
affiant herself, and in interviews with the children to
cause the Court to conclude that the affidavit was
meant to deceive and mislead the Court. 
 
1.(b)The emergency hearing given as a result of affiant’s
misleading affidavit was requested at a time that
caused enormous inconvenience and expense to
Randall Dean Keith. 
 
1.(c)That [sic] the motion to modify supported by Sharon
Kay Keith’s affidavit was subsequently non-suited
by Sharon Kay Keith.

          The trial court’s conclusions of law provide, in part, that
 
1.Sharon Kay Keith’s Emergency Petition to Modify
Parent–Child Relationship was filed in violation of
Rule 13 of the Texas Rules of Civil Procedure,
based on findings recited in 1, 1(a), 1(b) and 1(c).

                    . . . 
 
14.All claims brought by Sharon Kay Keith in her
Emergency Petition to Modify Parent–Child
Relationship were non-suited.
Based on the foregoing, we hold that the trial court’s
failure to recite particular reasons supporting good
cause in the sanctions order was harmless because
its findings of fact and conclusions of law supplied
the particulars of good cause required by rule 13. 
See Gaspard, 36 S.W.3d at 239; Gorman, 966
S.W.2d at 867–68.
 
B.      Merits
          We review a trial court’s rule 13 sanction’s award for an abuse of discretion.
Downer v. Aquamarine Operators Inc., 701 S.W.2d 238, 241–42 (Tex. 1985);
Gaspard, 36 S.W.3d at 239. We examine the entire record and will overturn a trial
court’s discretionary ruling only if it was based on an erroneous view of the law or
a clearly erroneous assessment of the evidence. See Mercedes-Benz Credit Corp. v.
Rhyne, 925 S.W.2d 664, 666 (Tex. 1996); Downer, 701 S.W.2d at 241–42. The evidence supports the trial court’s findings of fact 1, 1(a), 1(b), and 1(c)
and conclusions of law 1 and 14. Here, the record supports the finding that Sharon
filed an emergency motion without sufficient cause within the year following the
entry of their divorce decree.


 Sharon and Randall’s divorce decree had a mediation
requirement before the filing of any suits; however, no such mediation occurred. On
June 16, 2003, Sharon’s attorney sent a letter to Randall’s attorney, requesting to
schedule a mediation of some issues concerning modification of the divorce decree. 
In response, Randall telephoned Sharon’s attorney and sent a letter within 10 days of
having received Sharon’s request for mediation. Randall did not receive any further
communication from Sharon’s attorney, which indicated to him that the matter was
closed. On July 11, 2003, Sharon filed the emergency petition and requested that the
trial court make temporary orders for the safety and welfare of the children. 
          At the July hearing, Sharon testified that Andrew, the couple’s autistic son, was
fearless of the water and that she was concerned about how he would react to being
away from her. The trial court pointed out that nothing alleged in the emergency
petition made the cruise any more of a concern than would otherwise exist with
normal periods of access because the cruise was only five days and Randall had
already had visitation with the children from July 1 to July 11. Further, Sharon
testified to ongoing concerns, such as the children’s being improperly disciplined and
missing therapy sessions. Thus, the trial court dissolved part of the TRO because
there did not seem to be anything in Sharon’s affidavit to justify prohibiting the
children from going on the trip. 
          At the October 16 sanctions hearing, Randall testified that there had not been
a material or substantial change since the divorce decree had been entered. 
Specifically, Randall explained that the children’s living environment at his residence
had not changed, that the children’s physical health was not endangered, that their
emotional development was not significantly impaired, that he had at all times paid
the child support ordered by the trial court, and that his income had not increased, but,
rather, had decreased since the time of the divorce. Randall testified that Andrew was
not spanked and isolated for saying “no,” the children were not denied food or drink,
they were not yelled at frequently, and his wife had always acted appropriately around
the Keith children. Randall testified that the children were crying and upset about not
being able to go on the cruise. When Randall asked the children about allegations
that he had cut their nails too short and had not fed them, Emma and Kevin, two of
the Keith children, responded that “Mommy twists our words.” On October 15, 2003,
the trial court had met and spoken with the children. 
          During the October 22 sanctions hearing, Sharon testified that she did not have
personal knowledge of the allegations that she had made in her supporting affidavit
for the TRO. She relied on statements made by her children and acknowledged that
the children made statements that were sometimes untrue. Sharon admitted that
although she alleged in the emergency petition that Emma’s hair had been cut, the
haircut had occurred before the divorce was granted, which was seven months prior
to the filing of her emergency petition. Although Sharon had alleged that Randall had
not taken Andrew to therapy sessions, Randall explained that, after the divorce,
Andrew’s therapy was arranged so that it would not be scheduled during Randall’s
visitation, in order for Sharon to control Andrew’s therapy sessions. 
          The record also reflects that Sharon spoke to an attorney regarding Randall’s
taking the children on a trip out of the country two months before Sharon filed the
emergency petition; yet, Sharon waited until three days before the trip to file the
petition. Randall testified that in August 2003, Sharon had taken the children on an
eight- or nine-day vacation out of state and that she had not told him about the
vacation prior to their departure. Sharon further admitted that she had called the
police to Randall’s home at least five times from January 2003 through October 2003. 
Sharon non-suited her emergency petition before the sanctions hearing.
          We hold that the trial court did not abuse its discretion by finding that Sharon’s
emergency petition was groundless and filed in bad faith.Accordingly, we overrule points of error two and three.Attorney’s Fees as Child Support
          In points of error four and five, Sharon argues that the trial court erred in
making the attorney’s fees awarded to Randall and the attorney ad litem collectible
as child support. We construe Sharon’s contentions as challenging the trial court’s
legal conclusion that attorney’s fees may be awarded as child support.
          We review the trial court’s conclusions of law de novo. See In re Humphreys,
880 S.W.2d 402, 404 (Tex. 1994). As an appellate court, we must independently
evaluate conclusions of law to determine their correctness and will uphold them on
appeal if the judgment can be sustained on any legal theory supported by the
evidence. Houston Bellaire, Ltd. v. TCP LB Portfolio I, L.P., 981 S.W.2d 916, 919
(Tex. App.—Houston [1st Dist.] 1998, no pet.). Attorney’s fees are permissibly
taxed as child support when incurred during child-support enforcement proceedings. 
In re Moers, 104 S.W.3d 609, 611 (Tex. App.—Houston [1st Dist.] 2003, no pet.). 
The Legislature has permitted attorney’s fees to be taxed as child support solely in
Family Code section 157.167, which is limited to child-support enforcement
proceedings. Tex. Fam. Code Ann. § 157.167 (Vernon Supp. 2005). 
          The trial court’s findings of fact provided, in part, that 
3. The attorney’s fees and expenses incurred by the [sic]
Randall Dean Keith were necessaries for the children.
 
                    . . . 
 
7. The attorney’s fees and expenses incurred by Linda A.
Thompson were necessaries for the representation of the
children.
 
The trial court’s conclusions of law provided, in part, that 
6. The amount collectible by Randall Dean Keith is
collectible as child support.
 
7. The amount collectible by Linda A. Thompson is
collectible as child support.
          The case before us does not involve attorney’s fees and costs incurred in a
child-support enforcement proceeding. Rather, this case involves attorney’s fees and
costs incurred defending against Sharon’s emergency petition and prosecuting
Randall’s motion for sanctions against Sharon. Randall recognizes that this Court
has ruled that attorney’s fees can be taxed as child support only in child-support
enforcement proceedings. See In re Moers, 104 S.W.3d at 611. However, he argues
that other appellate courts in Texas have awarded attorney’s fees as necessaries in
suits affecting the parent-child relationship. Accordingly, Randall asserts that the
law is unsettled in this respect. Regardless of what other courts of appeals have
done, we have previously held in In re Moers that attorney’s fees can be taxed as
child support solely in child-support enforcement proceedings. We are not
persuaded that we should hold differently. Thus, we hold that the trial court erred
in characterizing attorney’s fees as child support. See In re Moers, 104 S.W.3d at
611–12. 
          We sustain points of error four and five. Appellate Attorney’s Fees
          The trial court conditionally awarded Randall $10,000 for appellate attorney’s
fees for an appeal to the Supreme Court and $7,500 for an appeal to the Court of
Appeals. In point of error six, Sharon argues that “the trial court erred in awarding
appellate attorney’s fees which are not supported by the evidence.” We construe this
as a legal-sufficiency challenge.



          In City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005), the supreme
court concluded, “the final test for legal sufficiency must always be whether the
evidence at trial would enable reasonable and fair-minded people to reach the verdict
under review . . . [L]egal-sufficiency review in the proper light must credit favorable
evidence if reasonable jurors could, and disregard contrary evidence unless
reasonable jurors could not.” Id.
          When reviewing a no-evidence point of error, “all the record evidence must
be considered in the light most favorable to the party in whose favor the verdict has
been rendered, and every reasonable inference deducible from the evidence is to be
indulged in that party’s favor.” Merrell Dow Pharm., Inc. v. Havner, 953 S.W.2d
706, 711 (Tex. 1997). “Anything more than a scintilla of evidence is legally
sufficient to support the finding.” Formosa Plastics Corp., v. Presidio Eng’rs &
Contractors, Inc., 960 S.W.2d 41, 48 (Tex. 1998).
           As a general rule, the party seeking to recover attorney’s fees carries the
burden of proof. Stewart Title Guar. Co. v. Sterling, 822 S.W.2d 1, 10 (Tex. 1991). 
The trial court’s award of attorney’s fees may include appellate attorney’s fees. 
Siegler v. Williams, 658 S.W.2d 236, 241 (Tex. App.—Houston [1st Dist.] 1983, no
writ). However, there must be evidence of the reasonableness of fees for appellate
work to support the award of appellate attorney’s fees. Id. Factors to be considered
in reviewing the reasonableness of attorney’s fees include the difficulties and
complexities in the nature of the case; the amount of money involved; the time
devoted by the attorney to the case; and the attorney’s experience and skill in
presenting the case. Stuckey v.White, 647 S.W.2d 35, 38 (Tex. App.—Houston [1st
Dist.] 1982, no writ). 
          An appellate court has the authority in looking at the entire record to draw on
the common knowledge of the justices of the court and their legal experience and to
view the issue in light of the experience and the amount in controversy. C.M. Asfahl
Agency v. Tensor, Inc., 135 S.W.3d 768, 802 (Tex. App.—Houston [1st Dist.] 2004,
no pet.). The amount of an attorney’s fees award rests in the sound discretion of the
trial court, and its judgment will not be reversed on appeal without a clear showing
of an abuse of that discretion. Rowley v. Lake Area Nat’l Bank, 976 S.W.2d 715,
724 (Tex. App.—Houston [1st Dist.] 1998, pet. denied). A trial court abuses it
discretion when it acts arbitrarily or unreasonably, without reference to any guiding
rules and principles. Downer, 701 S.W. 2d at 241–42.
          Expert opinion evidence on the reasonableness and necessity of attorney’s
fees, although not conclusive, is competent evidence of those matters. Lincoln
Income Life Ins. Co. v. Mayberry, 347 S.W.2d 598, 601 (Tex. 1961); see Moore v.
Bank Midwest, N.A. 39 S.W.3d 395, 406 (Tex. App.—Houston [1st Dist.] 2001, pet.
denied). The general rule is that an attorney’s statements must be under oath to
constitute evidence. Banda v. Garcia, 955 S.W.2d 270, 272 (Tex. 1997). However,
such error is waived by the failure to object when the opponent knew or should have
known that an objection was required. Id. 
          Sharon argues that the only mention of appellate attorney’s fees in the record
occurred in a dialogue between Randall’s attorney, Stocker, and the trial court. 
Sharon argues that at that time, Stocker was not under oath. However, the record
reflects that Stocker was duly sworn and testified as a witness on the issue of his
trial-court attorney’s fees.


 Stocker testified that he was a board-certified family-law
lawyer. He testified as to his rate and that his fees were reasonable for the same or
similar services in Harris County.


 Later in the hearing and on the record, the trial
court asked Stocker and Sharon’s attorney to estimate the amount of appellate fees,
if the case were to be appealed to the Court of Appeals and the Texas Supreme
Court. Stocker estimated that the amount of appellate fees for the Court of Appeals
would be $15,000 and for the Supreme Court would be $20,000; however, Sharon’s
attorney estimated that the amount of fees for an appeal would be $7,500 for an
appeal to the Court of Appeals and $10,000 to the Supreme Court.



          Here, the court’s questioning of both attorneys regarding their opinions on the
amount of appellate attorney’s fees is evidence within the meaning of Banda because
it was evidentiary in nature. The trial court asked:
THE COURT: . . . So if Glen [Sharon’s attorney] or if you
were to appeal, how much would the appellate [sic] have
to pay to defend the appeal? Do you know or do you have
an opinion?
 
[RANDALL’S ATTORNEY]: I have an opinion.
 
                    THE COURT: How much?
 
                    [RANDALL’s ATTORNEY]: $15,000
 
                    THE COURT: Do you agree with that?
 
[SHARON’s ATTORNEY]: My opinion would be $7,500,
Judge, from this end; but my hourly rate is a lot less than
[that of Randall’s attorney], so the time might be
approximately equal.
 
THE COURT: And how about if the losing party were not
satisfied with the Court of Appeals’ ruling and it was
appealed to the Supreme Court, how much would be
involved time wise to defend an appeal to the Supreme
Court, [Randall’s attorney]?
 
 
                    [RANDALL’s ATTORNEY]: Judge, if I might give you
an estimated dollar amount based on my experience as
opposed to time, I would say in the vicinity of $20,000.
 
                    COURT: [Sharon’s attorney], what do you think?
 
                    MR. LILLY: $10,000 Judge but the time again, is
approximately the same.
Sharon did not object to the court’s questioning, despite the circumstances’ clearly
indicating that each attorney was tendering evidence on the record based on personal
knowledge of appellate attorney’s fees. Sharon thus waived the oath reqiuement. 
See Banda, 955 S.W.2d at 272. 
          Sharon nonetheless contends that Randall’s attorney failed to state an exact
dollar amount and to give the number of hours that it would take to appeal the suit. 
Sharon does not support her argument with any law requiring the reversal of an
attorney’s fees award due to the absence of such specific testimony. We should not
impose such a requirement. See George Pharis Chevrolet, Inc. v. Polk, 661 S.W.2d
314, 318 (Tex. App.—Houston [1st Dist] 1983, no writ) (holding that complained-of 
deficiency concerning number of hours spent and reasonable hourly rate goes only
to weight of evidence and is not of magnitude that would render it insufficient as
matter of law). Moreover, the trial court, in fact, awarded the amount of contingent
appellate fees to which Sharon’s attorney subscribed, and Sharon does not complain
about her own expert’s conclusion as to contingent appellate fees.


Accordingly, we hold that Randall produced more than a scintilla of evidence
regarding appellate attorney’s fees. We overrule point of error six.
Conditional Provision of Attorney’s Fees
          In points of error seven, eight, and nine, Sharon argues that the trial court
erred because it improperly conditioned the appellate attorney’s fees.
           A trial court may not penalize a party for taking a successful appeal. Moore,
39 S.W.3d at 401; Sipco Serv’s Marine v. Wyatt Field Serv., 857 S.W.2d 602, 607
(Tex. App.—Houston [1st Dist.] 1993, no writ). An unconditional award of an
appellant’s appellate attorney’s fees is improper. Id. at 607–08. Therefore, the trial
court must condition the award of appellate attorney’s fees upon the appellant’s
unsuccessful appeal. Id. at 607. However, an unconditional award of appellate
attorney’s fees does not require reversal; instead, we may modify a trial court’s
judgment to make the award of appellate attorney’s fees contingent upon the
receiving party’s success on appeal. Pao v. Brays Vill. E. Homeowners Ass’n, 905
S.W. 2d 35, 38–39 (Tex. App.—Houston [1st Dist.] 1995, no writ); Houston
Livestock Show & Rodeo, Inc. v. Hamrick, 125 S.W.3d 555, 586 (Tex. App.—Austin
2003, no pet.).
          Sharon argues that the portion of the judgment reciting that “it is ordered that
said money judgment shall be reduced to Twenty-Six Thousand Nine Hundred
Thirteen Dollars and 51/100 ($26,913.51) if this case is not appealed by either party
to the Supreme Court resulting in a ruling adverse to Sharon Kay Keith” and that “it
is further ordered that said money judgment shall be reduced to Nineteen Thousand
Four Hundred Thirteen Dollars and 51/100 ($19,413.51) if this case is not appealed
by either party to the Court of Appeals resulting in a ruling adverse to Sharon Kay
Keith” imposes improper conditions. She contends that the terminology in the order
is ambiguous and does not condition the award on an unsuccessful appeal because
the order states that the judgment would be reduced if “the case is not appealed by
either party to the Court of Appeals resulting in an adverse ruling to Sharon Kay
Keith.”



          We sustain points of error seven, eight, and nine and modify the district
court’s judgment so that the award of appellate attorney’s fees is expressly and
unambiguously contingent on Sharon’s lack of success on appeal. We modify the
trial court’s order in part to state, “It is ordered that the Thirty-Six Thousand Nine
Hundred Thirteen Dollars and 51/100 ($36,913.51) money judgment shall be
reduced to Twenty-Six Thousand Nine Hundred Thirteen Dollars and 51/100
($26,913.51) if this case is not appealed by either party to the Supreme Court or if
the appeal results in a favorable ruling to Sharon Kay Keith” and “It is further
ordered that said money judgment shall be reduced to Nineteen Thousand Four
Hundred Thirteen Dollars and 51/100 ($19,413.51) if this case is not appealed by
either party to the Court of Appeals or if the appeal results in a favorable ruling to
Sharon Kay Keith.”  
Ad Litem Attorney’s Fees
          In point of error 10, Sharon argues that “the trial court erred in awarding the
ad litem a money judgment for attorney’s fees because there is no evidence or
insufficient evidence to support the ad litem’s attorney’s fees as reasonable and
necessary.” We construe this as a legal- and factual-sufficiency challenge. In
support of her argument, Sharon contends that no sworn testimony was presented to
demonstrate that the ad litem’s fees were reasonable and necessary because, when
Thompson spoke to the trial court on the subject of fees, she was not under oath and
her statements thus did not constitute evidence. 
          The Texas Family Code authorizes a court to award reasonable attorney’s fees
to an attorney appointed to represent a child. Tex. Fam. Code. Ann. § 107.015
(Vernon 2005). Attorney’s fees must be supported by competent evidence showing
their reasonableness. In re R.D.Y., 51 S.W.3d 314, 321, 325 (Tex. App.—Houston
[1st Dist.] 2001, pet. denied). The general rule is that an attorney’s statements as to
the reasonableness of his fees must be under oath to constitute evidence. Banda, 955
S.W.2d at 272. However, any error in failing to provide sworn testimony is waived
by the failure to object when the opponent knew or should have known that an
objection was required. See id. 
          The trial court asked Sharon if she wanted to cross-examine or to refute the
statements of Thompson, and Sharon responded that she had no issue with
Thompson’s credentials, rate, or amount of time spent on the case. A party may not
lead a trial court into error and then complain about it on appeal. Texaco, Inc., 729
S.W.2d at 835; Saper v. Rodgers, 418 S.W.2d 874, 877 (Tex. App.—Houston [1st
Dist.] 1967, writ ref’d n.r.e.). Accordingly, Sharon is estopped from complaining on
appeal about the sufficiency of the evidence. See Texaco, Inc., 729 S.W.2d at 835.
          In any event, the record shows that Thompson clearly attempted to prove her
request for attorney’s fees at the hearing. Thompson stated during the sanctions
hearing that she had worked 25 hours in the case, which had not been apportioned
or addressed, and that by the end of the hearing, the hours that she worked in the
case would have increased to 28 hours. Thompson also stated that her hourly billing
rate was $275.00 per hour and that that amount was reasonable, customary, and
necessary. 
          Therefore, even if Sharon were not estopped from complaining about the 
sufficiency of the evidence on appeal, we would hold that Thompson’s statements
to the court were legally and factually sufficient evidence to support the ad litem’s
attorney’s fees as reasonable and necessary.
          We overrule point of error 10.
Post-Judgment Interest
          In point of error 11, Sharon argues that “the trial court erred in awarding 10%
post judgment interest on the money sanctions.”


     
          Except for fundamental error, which Sharon does not claim that this is, to
preserve a complaint for appellate review, a party must present to the trial court a
timely and specific request, objection, or motion. Tex. R. App. P. 33.1(a). A
complaint regarding the award of post-judgment interest must be preserved in the
trial court by a motion to amend or to correct the judgment or by a motion for new
trial. See Allright, Inc. v. Pearson, 735 S.W.2d 240, 240 (Tex. 1987) (holding that
error regarding award of pre-judgment interest must be preserved); Miller v. Kendall,
804 S.W.2d 933, 944 (Tex. App.—Houston [1st Dist.] 1990, no writ) (holding that
motion to amend or to correct judgment or motion for new trial is proper vehicle for
preserving error in judgment). Sharon did not object in these ways.
          Accordingly, we hold that Sharon waived her objection to the court’s
calculation of post-judgment interest by not making it in the trial court. See Tex. R.
App. P. 33.1(a); Wohlfhart v. Holloway, 172 S.W.3d 630, 640 (Tex. App.—Houston
[14th Dist.] 2005, pet. den.) (holding that party waived argument regarding
post-judgment interest rate by not making it in trial court); Hachar v. Hachar, 153
S.W.3d 138, 145 (Tex. App.—San Antonio 2004, no pet.); El Paso Dev. Co. v.
Berryman, 769 S.W.2d 584, 592 (Tex. App.—Corpus Christi 1989, writ denied). 
          We overrule point of error 11.
Conclusion
           We modify the trial court’s order to delete all of the order’s provisions in any
way characterizing the awarded attorney’s fees as “child support” or “necessaries for
the children.” We also modify the trial court’s order to state, “It is ordered that the
Thirty-Six Thousand Nine Hundred Thirteen Dollars and 51/100 ($36,913.51)
money judgment shall be reduced to Twenty-Six Thousand Nine Hundred Thirteen
Dollars and 51/100 ($26,913.51) if this case is not appealed by either party to the
Supreme Court or if the appeal results in a favorable ruling to Sharon Kay Keith”
and “It is further ordered that said money judgment shall be reduced to Nineteen
Thousand Four Hundred Thirteen Dollars and 51/100 ($19,413.51) if this case is not
appealed by either party to the Court of Appeals or if the appeal results in a favorable
ruling to Sharon Kay Keith.” 
          We affirm the judgment as so modified.  
 
 
                              
                                                             Tim Taft
                                                             Justice
 
Panel consists of Justices Taft, Keyes, and Hanks.
Justice Keyes, dissenting.